## CORMERAIS et al. v. GENELLA.

A POWER of sale contained in a mortgage is a merely cumulative remedy, and does not affect the right to foreclose in chancery.

G., to secure the payment of his three promissory notes, made severally to C., F., and S., executed an instrument whereby he conveyed to C. certain real estate upon the condition that if he, G., should pay the notes according to their tenor, the conveyance should be void; but providing that if default should be made in the payment, then it should be lawful for C., after notice, to enter upon and sell the premises and apply the proceeds to the payment, which sale should be a bar both in law and equity against G. and his representatives: *held*, that this instrument was a mortgage with an ordinary power of sale, and not a trust deed, and that its character as a mortgage was in no respect changed because the mortgagee was a trustee for himself and other parties.

Where a mortgage contains a power of sale, the mortgagee has his election either to foreclose in chancery and obtain a judicial sale, or to sell under the power.

Whether a right of redemption exists after a sale under a power contained in a mortgage—*Query?*

In an action to foreclose a mortgage under our statute, as well since the amendments of 1860 and 1861 as before, a personal judgment for the debt secured may be entered in connection with a decree directing a foreclosure and sale. This judgment cannot, however, be docketed, or become a lien on other property, or authorize the issuance of an execution until after the sale is made and the proceeds applied *pro tanto* to its satisfaction.

APPEAL from the Fourth Judicial District.

The action was upon an instrument executed by the appellant, Joseph Genella, to the respondent Henry Cormerais, and was commenced August 6th, 1861. The appeal is upon the pleadings and the judgment. The complaint, so far as it bears upon the questions raised, shows: That April 2d, 1855, the defendant, appellant, Genella, being indebted to French, Wells & Co., of which firm the plaintiffs, respondents French & Wells, are the surviving partners, in $10,000; to the plaintiffs the Boston and Sandwich Glass Co.,

Cormerais *v.* Genella.

in $15,000 ; and to the plaintiffs Jarvis & Cormerais, in $15,000, made and delivered to them respectively his promissory notes for the said amounts respectively, payable in twelve months from date, and in order to secure the payment thereof, according to their tenor, agreed with the said Boston and Sandwich Glass Co., French, Wells & Co., and J. D. Jarvis & Cormerais, to convey the premises hereinafter mentioned to said Cormerais, as trustee for and on behalf of the said parties, and made and delivered, at or about the same time, to said Cormerais (one of the firm of Jarvis & Cormerais) his indenture of mortgage upon a certain lot of land in San Francisco, whereby, after reciting his indebtedness upon the notes, and his said agreement to convey the premises to said Cormerais, as trustee for and on behalf of said French, Wells & Co., the Boston and Sandwich Glass Co., and Jarvis & Cormerais, he bargained, sold, etc., the premises to said Cormerais : with the proviso, however, and upon the express condition, that if he should pay the said several sums of money when they became due, according to the true intent and meaning of the said notes, then said indenture of mortgage should be void ; and if default should be made in the payment of the said sums of money, or either of them, or of the interest, etc., then it should be lawful for the said Cormerais, his executors, administrators, or assigns, upon four months' notice of his or their intention so to do, to enter into and upon, all and singular, the said mortgaged premises, and to sell and dispose of the same, and all benefit and equity of redemption of said Genella, his heirs, executors, administrators, or assigns therein, at public auction, according to law ; and out of the money arising from such sale, to retain the principal and interest which should then be due on the said promissory notes, with the costs and charges of advertising and sale, rendering the overplus of the purchase money, if any, to said Genella, his heirs, etc. ; which sale so to be made, should forever be a perpetual bar, both in law and equity, against said Genella, his heirs and assigns, and all other persons claiming or to claim the said premises by, from, or under him or them, or any of them, etc.

That up to June 16th, 1858, Genella had paid on account of the interest, $4,756 48, leaving still due the principal sums amounting to $40,000, besides a large arrear of interest. That

prior to that time, Cormerais gave to Genella the four months' notice specified in the mortgage, and on that day he and Genella entered into a written agreement (set forth at large in the complaint), reciting that whereas Genella had given to Cormerais a certain mortgage, which was recorded, etc., and the conditions of the mortgage had been broken by the non-payment of the moneys therein specified, and Cormerais had given the four months' notice, etc., and Genella had agreed that if Cormerais would suspend and postpone the sale, Genella would pay the mortgage debt in installments of $5,000 each every six months ; therefore they agreed, the said Cormerais to suspend and postpone the sale from six months to six months, so long as the installments should be regularly paid, and Genella to pay said mortgage debt in installments of $5,000 at the times specified ; and if he should fail to pay any one, that Cormerais might proceed to sell said mortgaged premises, at public auction, as in said mortgage deed is provided. That Genella paid the first installment, but failed to pay any other, or any money upon said notes, or either of them, leaving due the whole of the principal sums and a large arrear of interest ; concluding with the usual prayer.

Genella demurred to the complaint on the grounds : 1st. Of misjoinder of parties plaintiff.    2d. Of improper union of several causes of action.    3d. No cause of action, and 4th. Ambiguity and uncertainty.    His demurrer was overruled by the Court, and he answered, setting up two defenses ; on both of which the Court found against him on the proof upon the trial, and the plaintiff had judgment.

The judgment was in the usual form for a foreclosure sale, with provision for a surplus or deficiency.    The amount due to each of the several plaintiffs was separately liquidated.    This part of the judgment furnishes one of the points of counsel for appellants, and is in these words : " It is ordered, adjudged, and decreed, that the plaintiffs, Abram French and John T. Wells, have and recover of and from the defendant, Joseph Genella, the sum of $12,554 95, with interest thereon at the rate of seven per cent. per annum from the date hereof; the plaintiffs The Boston and Sandwich Glass Company, have and recover of and from the defendant, Joseph

Genella, the sum of $18,347 65, with interest, etc.; and the plaintiffs Deming Jarves and Henry Cormerais, have and recover of and from the defendant, Joseph Genella, the sum of $18,879 84, with interest," etc.

From this decree the defendant appeals.

*Selden S. Wright, A. A. Cohen,* and *L. Aldrich,* for Appellant.

· I.   The demurrer to the complaint should have been sustained by the District Court, because the instrument sued on is not a mortgage.

The difference in the respective rights of parties making or claiming under a deed of trust, as distinguished from a mortgage, is clearly stated by the learned Chief Justice, in *Koch* v. *Briggs* (14 Cal. 256).   The only difference between that case and this is that here the trustee is also a creditor.   The rights and remedies of the other parties plaintiff are identical with the rights and remedies of the creditors in *Koch* v. *Briggs,* and the rights of Genella are the same as those of the grantor in that case, and the rights, powers, and duties of Cormerais the same as those of the trustee. Can the fact that he was a member of a firm which was also a creditor and one of the plaintiffs make such a difference in the rights of all the rest ?

Cormerais has voluntarily taken upon himself the character of trustee for the other parties plaintiff, and he must fulfill his duty to them in accordance with the contract, even if to do so shall be in conflict with his own interests.   Admit that the instrument, so far as Cormerais is concerned, is a mortgage.   Yet it is a mortgage with a power to sell, and when that power is executed the equity of redemption is gone.   The validity of such a provision is not now questioned anywhere.   (1 Washburn on Real Property, 498.)

And although in such cases as suggested by the Chief Justice, in the case above cited, the mortgagor would ordinarily still have the right to invoke the aid of a Court of Equity, yet he clearly would not be allowed to do so if such course would interfere with the rights of other parties interested in the instrument.

If this right to sell had not been so clear, and the instrument should be held a mortgage as to Cormerais, and a deed of trust as

to the other parties plaintiff, then Cormerais might have had the right to file his bill as sole plaintiff, and the other plaintiffs might have been made defendants in this suit. Then, under this view, there is a misjoinder of parties plaintiffs and defendants, and that cause of demurrer should have been sustained.

But the necessity for such a bill could not possibly arise, as the trustee was clothed with full power to sell, and it was the contract of the parties that in default he should sell, and the mode of executing the trust was clearly prescribed. If a mortgage contains a power to sell, neither legal or equitable proceedings are necessary to enforce it. (*Bloom* v. *Van Ranseler*, 15 Illinois; *Fogarty* v. *Lawyer*, 17 Cal. 443.)

A deed of trust differs both from a mortgage and a conditional sale. The distinction between the two former conveyances, which seems now to be well settled, is this: It is the essence of a mortgage that it is a security for a debt which the grantor or obligor remains under a legal obligation to pay, and when no such obligation exists an agreement to reconvey will not be a mortgage but a mere privilege to repurchase. But if the defeasance be executed to the grantor and a stranger, then the instrument is no longer a mortgage but a conditional sale. (1 Washburn on Real Property, 495; *Low* v. *Henry*, 9 Cal. 538.)

If the mere naming of a stranger as one of the defeasors stamp the instrument with the character of conditional sale instead of a mortgage, much more so would the fact that nearly all of the *cestuis que trust* were not concerned with the legal title stamp the instrument now under review with the character of a deed of trust.

II. The Statute of 1861 (Prac. Act, Sec. 246) under which the judgment in this case is claimed to have been entered, prescribes the form of judgment which " the Court shall have power to render," and as the judgment here is not such as the section provides for, it is undoubtedly erroneous. This form of judgment was good under the old practice, but under the amended Act of 1861 cannot now be taken. It will not do to say that this form of judgment was intended as a finding of the amount due to the plaintiffs. Both the decree and judgment contain an elaborate and detailed statement of the amount found to be due to the plaintiffs, and after

that in each instrument follows a judgment for money in the ordinary common law form. Such a judgment is not only not warranted by our statute, but is forbidden. The proceeding of foreclosure in this State being regulated by statute, its requirements should be strictly pursued. The plaintiffs had their choice either to file a bill for foreclosure of the mortgage or to bring an action of assumpsit on the notes, and having elected to foreclose they cannot in such proceeding take a judgment uniting the relief proper to both actions.

*Eugene Casserly*, for Respondents.

I.   The deed of April 17th, 1855, from the appellant, Genella, to the respondent Cormerais, is a mortgage with all the essential features of one, and it is not a conveyance of the legal title in fee upon trust as contended by the appellant. In this State a mortgage of land, whatever its form, is in its effect a contract simply for a specific lien or charge upon a particular parcel of land, unaccompanied by any right of possession or other estate therein, by way of security for the performance of some agreement, generally to pay money.   (*McMillan* v. *Richards*, 9 Cal. 409–411; *Goodenow* v. *Ewer*, 16 Id. 406–408; *Kortright* v. *Cady*, 21 N. Y. 347, 365; *Power* v. *Lester*, 23 Id. 533.)

The deed in this case answers perfectly to these essential and distinctive conditions of a mortgage. Speaking in the ordinary language of the law of mortgages, the instrument is a conveyance defeasible on condition with a right in equity of redemption in the grantor on the one hand, and of foreclosure in the grantee upon the other—these two rights being mutual and reciprocal. This is, by all the authorities, the distinctive test of a mortgage.   (*Koch* v. *Briggs*, 14 Cal. 262; *Sampson* v. *Pattison*, 1 Hare, *535, 536.)

The position of appellant's counsel that the instrument is not a mortgage, but a conveyance of the legal title in fee to the respondent Cormerais, in trust to sell to pay the debt of Genella, cannot be maintained. There is no similarity, or even analogy, between a mortgage and such a conveyance in point of legal effect and operation, especially in this State. In the case of a mortgage no estate or interest in the land passes out of the mortgagor into the mort-

gagee, except the mere right in the latter to hold a specific lien or charge upon the land, and in a certain contingency to have the land applied, by means of a sale, in equity in satisfaction of his lien. In all other respects the title of the mortgagor to his land is wholly unaffected by the mortgage, and continues precisely the same after it is made as it was before. In the case of a conveyance, such as is claimed to have been made here by the appellant, the entire legal title passes out of the grantor into the grantee, and vests in the latter absolutely, subject only to the purposes of the trust, with all the incidents of title, such as the right to the possession of the premises, the rents and profits, etc. The grantor of such a conveyance has no equity of redemption left in him, and the grantee has no right of foreclosure, for the best of all possible reasons, that there is nothing to foreclose. Each instrument may have the same general object, namely, to secure the payment of a sum of money. But this is a mere accidental resemblance, not in the slightest degree affecting or modifying the essential difference between the instruments, or between their effect and operation in law.

That Cormerais, the grantee of the mortgage, is described as " trustee," does not render the instrument any the less a mortgage. A man may be the trustee of a mortgage, as well as of the legal title in fee. Instances are not uncommon in the books, in which a mortgage is made to one, for the benefit of several sets of creditors. (*Davis* v. *Hemmingway*, 29 Vt. 438 ; *Wood* v. *Williams*, 4 Madd. top 101, *184; *Lowe* v. *Morgan*, 1 Bro. Ch. *368.)

So, the power of sale granted in a mortgage does not affect the question. Such a power is according to the form of a mortgage in use in this and other States, and does not in any respect interfere with the right of the mortgagee to have a foreclosure and sale. (1 Wash. Real Prop. 501, Sec. 8 ; *Cox* v. *Wheeler*, 7 Paige, 249; *McGowan* v. *Branch Bank*, 7 Ala. 523 ; *Carradine* v. *O'Connor*, 21 Id. 573 ; and see *Jenkins* v. *Rowe*, 11 E. L. & E. 299 ; *Sampson* v. *Pattison*, 1 Hare, *536.)

II.  The form of the decree is proper. *Chapin* v. *Broder* (16 Cal. 403) seems to settle the question. The decision there is, that until after the balance remaining due upon the sale of the mortgaged premises has been ascertained, the personal judgment against

the mortgagor cannot be docketed, so as to give a lien upon his other real property.   Clearly, the amendment of 1861 (Laws of 1861, 306, 307) has simply embodied in a statutory enactment the principle of this decision.   The language of the act is :  " If it shall appear, etc., that there is a deficiency, etc., and a balance still due, etc., the judgment shall then be docketed for such balance against the defendant," etc.

It is " the judgment " which is docketed for the balance, not " a judgment ;" showing very plainly that the effect of the amendment is, not to forbid the rendition in the decree of " the judgment " against the mortgagor for the mortgage debt as before, but only the docketing of it, so as to give a lien, until after the balance due shall have been ascertained.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. and NORTON, J. concurring.

This action was brought in the District Court to foreclose an instrument claimed to be a mortgage.   The plaintiffs recovered judgment, and the defendant appeals to this Court.

The first ground of error is that the complaint does not state facts sufficient to constitute a cause of action, and therefore the Court below erred in overruling the demurrer filed by the defendant setting up that ground.   Upon this point the defendant contends that the instrument sued on is not a mortgage, but a conveyance of the fee in trust, and that therefore this action cannot be maintained to enforce it.

The complaint sets forth that the defendant executed to French, Wells & Co. his note for $10,000 ; to the Boston and Sandwich Glass Company for $15,000, and to Jarvis & Cormerais for $15,000, and to secure the payment of said notes, he executed to said Cormerais a mortgage whereby he granted, bargained, sold, aliened, released, conveyed, and confirmed to the said Cormerais, his heirs and assigns, certain property therein described, with the proviso, however, and upon the express condition that if the said Genella should well and truly pay said notes and the interest thereon, then the said indenture of mortgage should be void, and if default should be made in the payment of the same, then it should be lawful for

the said Cormerais, his executors, administrators, or assigns, upon four months' notice of his or their intention so to do, to enter upon the mortgaged premises and to sell and dispose of the same, and all benefit and equity of redemption of said Genella, his heirs, executors, administrators or assigns therein, at public auction, according to law, and out of the proceeds of the sale to retain the principal and interest then due on the notes, with the costs of the sale, rendering the overplus, if any, to said Genella; which sale so to be made should forever be a perpetual bar both in law and in equity against said Genella, his heirs and assigns, and all other persons claiming or to claim the said premises under him or them. This is clearly a mortgage, with an ordinary power of sale—an instrument in common use in many States, especially those having special laws, regulating the mode and manner of conducting sales under them. It has all the usual conditions and provisions of a common mortgage, with the addition thereto of a power of sale vested in the mortgagee. It differs entirely from the class of instruments known as trust deeds, one of which was the subject of litigation in *Koch* v. *Briggs* (14 Cal. 262.) The provision respecting a sale by the mortgagee is not mandatory or exclusive in its character. It provides merely that if default be made it shall be lawful for the mortgagee to sell the mortgaged premises at public auction, according to law, the latter clause evidently copied from some form in use in a State having laws regulating such sales. In this State we have no such special statute, and it may be doubtful, perhaps, whether under this provision, any sale of the property could be made, "according to law," except a regular judicial sale, under a decree of foreclosure rendered by some competent Court. It is clear that there is nothing in the instrument forbidding a sale under a judicial decree; and the mortgagee has his election to foreclose in that way or under the power of sale vested in him by the mortgage. It is decidedly for the benefit of all parties that the mortgage should be foreclosed in the former mode rather than the latter. In that way there is no doubt of the right of the mortgagor, or parties holding under him, to redeem the property within six months after the sale, as provided by the statute. If the latter mode should be adopted, a doubt might arise whether such right of redemption

existed. We have never heard it doubted before that Courts of Equity have the power to foreclose mortgages with powers of sale, nor has the able counsel for the appellant referred us to a case in which the right to foreclose such an instrument in a Court of competent jurisdiction has been denied. The power of sale contained in the mortgage is a mere cumulative remedy, and does not in the least affect the right to foreclose in chancery. (Washburn on Real Prop. 501, Sec. 8; *Carradine* v. *O' Connor*, 21 Ala. 573; *Mc-Gowan* v. *The Branch Bank of Mobile*, 7 Id. 823; *Cox* v. *Wheeler*, 7 Paige, 248.)

It does not in the least change the character of the instrument as a mortgage, because the mortgagee is a trustee for himself and other parties. (*Davis* v. *Hemmingway*, 29 Vermont, 438; *Lowe* v. *Morgan*, 1 Brown's Ch. 368; *Wood* v. *Williams*, 1 Madd. Ch. 185.)

The second point made by the appellant is, that the Court erred in rendering personal money judgments in favor of each of the parties holding the notes against the defendant, before the sale of the property. He insists that this cannot be done under Sec. 246 of the Practice Act as amended in 1861. (Stat. of 1861, 306.) Respondent, in his brief, refers to the case of *Chapin* v. *Broder* (16 Cal. 403, 422) as an exposition of this statute, but that was a decision upon a judgment rendered before this section was amended by the acts of 1860 and 1861, and therefore has no application to the present case. Counsel for appellant admits that the judgment in this case would be good under this section of the Practice Act, as it stood before the amendments of 1860 and 1861, but contends that the amendment of 1861 has taken away the power of the Court to render a personal money judgment until *after* the sale of the property, and the application of the proceeds of the sale to the debt. As this amendment relates to the remedy given to parties, it should be liberally construed to extend the remedy. (*White* v. *The Mary Ann*, 6 Cal. 470; *Burnham* v. *Hays*, 3 Id. 119.) The amendment first provides that "there shall be but one action for the recovery of any debt, or the enforcement of any right, secured by mortgage or lien upon real or personal property, which action shall be in accordance

with the provisions of this chapter." This part relates entirely to the " action," and not to the form of judgment which the Court may render in the action. It then provides : " In such action the Court shall have power, by its decree of judgment, to direct a sale of the incumbered property," etc. This second clause of the amendment, it will be seen, is substantially the same as the original section before amendment, with the exception that it omits the clause in the original section providing for an " execution for the balance," which is provided for in the third clause of the amendment. Here, then, in this second clause of the amendment, there is no essential change of the law as it was before, relating to the power of the Court to render a personal judgment before sale. It does not limit or prohibit the exercise of any power previously employed by the Court in framing its decrees in foreclosure suits. The last clause of the amended section then provides that " if it shall appear from the Sheriff's return that there is a deficiency of such proceeds and a balance still due to the plaintiff, *the judgment* shall then be *docketed* for such balance, against the defendant or defendants personally liable for the debt, and shall, from the time of such docketing, be a lien upon the real estate of the judgment debtor, and an execution may thereupon be issued by the Clerk of the Court, in like manner and form as upon other judgments, to collect such balance or deficiency from the property of the judgment debtor." Here, again, we find no restriction upon the power of the Court to render a personal judgment before the sale of the mortgaged property. In fact, it does not invoke the aid of the Court at all to carry out its provisions. The return of the Sheriff shows whether there is any deficiency or not, then the Clerk dockets the judgment for such deficiency, and issues execution as in other cases. If there should. arise any question as to the amount of the deficiency, or the application of the proceeds of the sale, the aid of the Court might be invoked to determine the matter. Again, this clause refers to " *the judgment,*" evidently presupposing that a personal judgment might be, or had been, rendered before the sale, and simply providing that after the application of the proceeds of the sale to such judgment, it might then, if there was any deficiency, be docketed for the amount of such deficiency.

There are many good reasons why no change should be made in the practice of rendering personal judgments in the decree of foreclosure, unless imperatively required by the statute, which are evident to every practitioner.    In the present case there is evidently no such requirement, but on the contrary a recognition of the previously existing practice.    That practice was well known to the Legislature, and had been settled by numerous decisions of this Court.    (*Rowland* v. *Lieby,* 14 Cal. 156 ; *Rollins* v. *Forbes,* 10 Id. 299 ; *Rowe* v. *Table Mountain Water Company,* 10 Id. 441.) If they had intended to change that practice, they could readily have done so, in framing the amendment, by using apt words for that purpose.    Not having done so, it is evident they did not intend to make any change in that respect.    We do not mean to be understood, however, that a personal judgment rendered in a foreclosure suit could be docketed before a sale of the mortgaged property, or that it would become a lien upon other property of the debtor, or that an execution could issue thereon against the debtor's property generally, before the sale and docketing of the judgment for the balance.    The provisions of the amendment are all plain and explicit on these points.    In the view we have thus taken of the statute, there is no error in the manner of entering the decree in this case.

Judgment affirmed.