In the Matter of the Estate of WILLIAM H. NELSON, Deceased.

Surrogate's Court, Westchester County, June 18, 1934.

*Ticknor & Ticknor*, for Etta E. Nelson, widow.

*Milbank, Tweed, Hope & Webb* [*Thomas A. Ryan* of counsel], for the Chase National Bank of the City of New York, as trustee.

*Mitchell, Taylor, Capron & Marsh* [*Clinton C. Swan* and *Henry R. Barrett* of counsel], for Harry L. Nelson and another.

*Frank S. Stevens, Jr.*, special guardian.

SLATER, S. Upon this accounting proceeding the court is asked to construe the second paragraph of the will, which is as follows:

" *Second.* I give and bequeath to my wife, Etta E. Nelson, all personal property other than cash or evidences of indebtedness which I may have at my decease, located or ordinarily kept on the premises at Mount Kisco, N. Y., where I now reside."

The above is a reproduction of paragraph second in the original will.

" It is the testator's mind we seek to read. * * * To interpret this intent we may consider the circumstances known to him when the will was made, and we may search the will itself for any language that may give us light." (*Matter of Neil*, 238 N. Y. 138, 140.)

Judge CRANE said in *Matter of Watson* (262 N. Y. 284, 297): " The language of each will leads to its own conclusion. No two persons are alike; neither are their wills. Every one has his own peculiar family history, temperament, duties and responsibilities. No two estates are alike. How, then, can we expect one will to be a pattern for another? This is one field where standardization has proved ineffectual. We still take each document on its own merits. Either for good or ill, a testament has no progeny. Each is a new creation." At page 299 the court wrote: " We take wills as we find them, and, unless contrary to some statute, give them effect as written."

In construing a will, it has been repeatedly held that the object of the court is to ascertain not intention simply, but the expressed intention of the testator, *i. e.,* the intention which the will itself has expressed or by implication declared. In other words, the duty of the court is to ascertain the intention of the testator from the words he has used. (*Matter of Silsby*, 229 N. Y. 396, 402; *Matter of Durand*, 250 id. 45, 54.) Courts have no right to rewrite and make a new will.

The briefs of counsel for the nephews and the trustee speak of " tangible " personal property. Nowhere does the will refer to *tangible* personal property. " The expression, ' personal property,' signifies every kind of property which survives a decedent, other than real property as defined in this subdivision." (Surr. Ct. Act, § 314, subd. 12.) " Personal property " is also defined in paragraph 1, section 39 of the General Construction Law. (See, also, *People* v. *Ashworth*, 220 App. Div. 498, 501.)

The word " all " means " every one, or the whole number of particulars; the whole number. * * * A more comprehensive word cannot be found in the English language." (1 Words & Phrases [First Series], 312.) The Standard Unabridged Dictionary

[Funk & Wagnalls] gives " all " as meaning " the utmost possible." The word " all " being an adjective of number, it necessarily means the whole number of.

With these statements in mind, let us look into the circumstances known to William H. Nelson when the will was made.

The evidence shows that William H. Nelson, at the age of sixty-three, married his wife, his widow, when she was twenty-six years of age. She is now in her fifty-second year. He died January 21, 1933, at the age of eighty-eight years, indicating a marital existence of twenty-five years. He never had children. He lived in a home in Mount Kisco, surrounded by about seventeen acres of land. This real property he conveyed to his wife in 1921. He was fond of trotting horses and took delight in their care and their efforts upon the track. It was stipulated by counsel that the married life of these two people was agreeable and happy and that Mrs. Nelson was a devoted, affectionate and loyal wife. There was offered in evidence an original will of the testator, executed in 1916, wherein he gave all his personal property to his wife. The court also took proof of the sale of several parcels of real estate between the time of making of the two wills.

The decedent had been engaged in the milk business in New York and Westchester county with his brother, George Nelson, and from this business he accumulated a fortune. His brother George had two sons, Harry and George.

The transfer tax proceedings, as well as the account of proceedings, indicate that he had stocks and bonds of the value of $432,228.86; bonds and mortgages of $69,412.17; racing horses of the value of $2,900; money in a checking account of $1,869.01. *The stocks and bonds had always been kept in a safe deposit box in New York city. The bonds and mortgages had always been kept in a safe in his home in Mount Kisco.* His racing horses, as well as his personal effects, such as clothing and jewelry, were also at his home.

The probated will is dated April 15, 1925, and changed the will of 1916 in the following particular: It created a new paragraph second, which is the matter in contention, and by the third paragraph gave the residuary estate in the following words:

" *Third.* All the rest, residue and remainder of my estate, both real and personal and wherever situate, I give, devise and bequeath to my executors hereinafter named, in trust, however, for the following uses and purposes, to wit:

" To invest and reinvest the same and collect and receive the rents, income and profits thereof and to pay over the same to my wife, Etta E. Nelson, so long as she shall live and shall remain unmarried.

" Upon the death or re-marriage of my said wife, Etta E. Nelson, if my nephew, Harry Nelson shall have previously married and shall then have a son of lawful issue, named William H. Nelson, who shall be living at the time of my wife's decease or re-marriage, I direct my said trustees to apply said rents, income and profits to the support, education and maintenance of said William H. Nelson during his minority, if he be then under the age of twenty-one years. If said William H. Nelson shall be of the age of twenty-one years or more at the time of the death or re-marriage of my said wife, or, if he then be a minor, upon his arrival at the age of twenty-one years, I direct my said trustees to pay over to said William H. Nelson, the whole of said trust fund, together with any accumulated interest.

" If, however, upon the death or re-marriage of my said wife, my nephew, Harry Nelson shall not have been previously married and shall not have a son of lawful issue named William H. Nelson, and my nephew, George Nelson shall at that time have a son of lawful issue then living, named William H. Nelson, I direct my said trustees to apply said rent, income and profits to the support, education and maintenance of said William H. Nelson, son of George Nelson during his minority, if he be then under the age of twenty-one years. If said William H. Nelson shall be of the age of twenty-one years or more at the time of the death or re-marriage of my said wife, or, if he then be a minor, upon his arrival at the age of twenty-one years, I direct my trustees to pay over to the said William H. Nelson, son of George Nelson, the whole of said trust fund, together with any accumulated interest.

" If, upon the death or re-marriage of my said wife, neither of my said nephews, Harry Nelson or George Nelson shall have a son of lawful issue then living, named William H. Nelson, then the trust hereby created shall immediately cease, and I direct my said trustees to pay over the whole of said trust fund with any accumulated interest to those persons who will be my next of kin at that time, such distribution to be made in the proportion and in the same manner as though I had died intestate."

When the probated will was executed, neither nephew had been married.

The fourth paragraph stated that the provision for his wife should be accepted in lieu of dower in the real estate. He appointed his wife and the National Park Bank of New York city as executors and trustees. By a codicil dated March 8, 1928, he chose the Chase National Bank of the City of New York in place of the National Park Bank to act as executor and trustee with his wife.

I have quoted the third paragraph in full to show an intendment on the part of the testator to give the residuary to a grandnephew to be born who might be named William H. Nelson, and in the event that no such grandnephew should be so named, such residuary estate was to pass as intestate property, upon the widow's death or remarriage, to testator's next of kin. The only gift flowing to the two nephews is the trust estate, in the event that they may be next of kin at the death of or remarriage of the widow, provided that no child of either nephew has been named " William H. Nelson."

There was one change in the character of his property between the time he made his will in 1925 and the date of his death. At the time of the will making, he owned real estate in New York city which he sold in his lifetime for $80,000.

It is the contention of the widow that the testator placed into the residuary estate the bonds and mortgages in the amount of $68,000 which were kept in the safe at his home in Mount Kisco. The widow's interpretation of paragraph second is to the effect that she is given all personal property, except cash, or evidences of indebtedness (meaning the bonds and mortgages), which were " located or ordinarily kept at the premises at Mount Kisco, N. Y." This contention gives to the widow all other personal property, meaning the securities kept in New York city to the value of $432,228.86, less transfer taxes, commissions and cost of administration, as well as any other small items of personal property, such as horses, clothing and jewelry of small value, in all about $365,000.

The draftsmen of the will presented the widow's views. So, it may be said he stated what he believes was the testator's intention.

Upon the argument it was claimed by counsel for Harry and George Nelson, the two nephews, that the second paragraph should be interpreted as creating a gift of such personal property, other than cash and evidences of indebtedness, as is located on the premises at Mount Kisco, meaning only a gift of the personal property located at the home at Mount Kisco (other than cash or evidences of indebtedness, i. e., bonds and mortgages amounting to $68,000).

By this interpretation the only personal property the widow would take under the second paragraph is clothing, jewelry and horses. It was stipulated by counsel that the value of such personal property would not exceed $2,300. The nephews say that with this outright gift the intendment was to give the widow an estate for life, or until remarriage, in all other personal property.

Concisely stated, the question is: By paragraph second did the testator intend to give the widow only the personal property located on the premises at Mount Kisco (*except* cash and evidences of indebtedness, *i. e.*, bonds and mortgages amounting to $68,000), or did he intend to give her all personal property wherever situate, except cash and evidences of indebtedness located on the premises at Mount Kisco?

It will be observed that in the original will there is a comma after the word " wife " as well as a comma after the word " Nelson " and no other comma until the end of the word " decease " and then another after " Mount Kisco."

The first twelve words of the second paragraph gave to the wife all personal property. If we had a period here, the effect would have been to have vested her with the *entire* personal estate. But the draftsman caused the will-maker to use the words " other than cash or evidences of indebtedness." If we placed a period at the end of the word " indebtedness," the paragraph up to that point would be meaningless because the gift of all the personal property would be offset by the words " other than cash or evidences of indebtedness." The words " other than cash or evidences of indebtedness " become words of exclusion. The words " other than " are synonymous with the word " except." " Other than " creates an exception. (6 Words & Phrases [First Series], 5104.) The word " other " means something different from that which has been specified. The word " than " is an adverbial modifier.

The words of the gift read " all personal property." The additional word " *my* " so as to read " all *my* personal property " is not used. The word " my " preceding the thing given might render the legacy specific. Here the legacy is general and all inclusive, until we reach the exception, which is " cash or evidences of indebtedness which I may have at my decease located or ordinarily kept on the premises at Mount Kisco." The gift of all personal property has something excepted from it. What is it? " Cash or evidences of indebtedness, located or ordinarily kept on the premises at Mount Kisco, N. Y. where I now reside." If an entire personal estate is given and then something is excepted out of it, it becomes necessary to locate the excepted part and that is what the draftsman did for this will-maker.

Is there anything strange in a man giving to his wife who had been his companion for twenty-five years the bulk of his estate? Members of the Decedent Estate Commission which brought into being the new Decedent Estate Law in effect September, 1930, did not think so. Neither did the Legislature when it adopted the Commission's report. It was the testator's evident intention to

leave something for the trust after the death or remarriage of the wife in order to induce either nephew, Harry or George, to name one of their sons for the testator, William H. Nelson. The evidence shows that Harry lives in Katonah, N. Y., and George lives, and has lived for many years, in Butte, Mont.; that Harry has two sons and George has one son; that all three sons were born before the testator died, none of whom were named " William H. Nelson."

It is readily observable that the spirit of kinship, so enthusiastically featured in the briefs by counsel for the nephews and the trustee, is dormant in the nephews. They have not yet named any of their present three children " William H. Nelson." The testator did not leave one dollar directly to either nephew in either will. His nearest " flesh and blood " did not appeal to him. They were not objects of his bounty. Here, too, the kinship spirit was dormant.

We are not permitted to speculate or to say (quoting brief by counsel for the trustee) it is " strange indeed," or that what a will-maker does is " usual rather than unusual," or that the will is peculiar. The answer is, this will is the testator's. It was drawn by a competent attorney. It is in plain language. If there is anything " strange " or " peculiar " about it, it portrays William H. Nelson and his intention. Canons of construction are never made to force language out of a will. (*Matter of Watson*, 262 N. Y. 284, 294.) So we will take this will on its own merits. It is William H. Nelson's creation.

What did the testator intend to give to induce either nephew to name a child who was to carry on his name? At the making of the will of 1925, he must have had in mind to put into the trust the real estate in New York valued at $80,000, plus the bonds and mortgages kept in his safe at his home, valued at $68,000, making in all $148,000. Between the date of the will making and his death, he disposed of the real estate, leaving for the trust $68,000 in bonds and mortgages; that is, if the trust is ever created. Of course, if it is never established, it passes as intestate property to the next of kin.

In view of all the surrounding circumstances, as disclosed by the evidence, I hold that paragraph second of the will bequeaths to the wife all personal property, with the exception of the cash, or evidences of indebtedness, which were located or ordinarily kept on the premises at Mount Kisco, N. Y.

Submit decree in accordance with this opinion and decision.