[L. A. No. 23225. In Bank. May 4, 1956.]

CONTINENTAL CASUALTY COMPANY (a Corporation), Appellant, v. PHOENIX CONSTRUCTION COMPANY (a Corporation) et al., Defendants and Respondents; UNDERWRITERS AT LLOYD'S, LONDON (an Unincorporated Association) et al., Interveners and Respondents.

Jennings & Belcher, Sigurd E. Murphy and Louis E. Kearney for Appellant.

Robert W. Stevenson, John F. O'Hara, Martin, Hahn & Camusi, William P. Camusi and Oscar F. Catalano for Respondents and Interveners.

Bledsoe, Smith, Cathcart, Johnson & Phelps, Early, Maslach, Foran & Williams as Amici Curiae on behalf of Respondents.

SCHAUER, J.—In this suit for declaratory relief determination is sought, as among the contesting insurance companies, of the order of incidence and of the limits of their respective contractual obligations to defendants Phoenix Construction Company, Oilfields Trucking Company (hereinafter called, respectively, Phoenix and Oilfields), and James E. Mason, all as affected by certain judgments previously recovered by defendant Leming in an action for personal injuries. Leming was injured in a highway truck collision on July 10, 1951, caused by the negligent driving by Oilfields' employe, Mason, of a truck owned by Oilfields. In April, 1955, this court affirmed a judgment (in Kern County Superior Court

action No. 56455) in Leming's favor against Oilfields and Phoenix in the principal sum of $213,460.02 (*Leming* v. *Oilfields Trucking Co.*, 44 Cal.2d 343 [282 P.2d 23]); a judgment entered against Mason in the same action, in the principal sum of $212,585.69, had previously become final.

Phoenix and Oilfields as joint venturers contracted with the State of California to do certain highway construction work known as the Haypress Canyon Job. The business of Phoenix was highway and similar construction; that of Oilfields was the truck hauling of oil surfacing materials and heavy construction equipment. The two companies had entered into the highway contract pursuant to a written agreement between themselves that they should engage in certain unspecified joint ventures. The present suit was commenced by Continental Casualty Company (hereinafter called Continental), which had issued an insurance policy to Phoenix, to have declared the liabilities arising under various outstanding policies. Named as defendants were (1) Phoenix, (2) Oilfields, (3) Transport Indemnity Company (hereinafter called Transport), the insurer of Oilfields, (4) Leming, (5) Mason, who defaulted, and (6) various other persons as to whom the action was dismissed before trial. Complaints in intervention were filed on behalf on "Underwriters at Lloyd's, London, an unincorporated association" (hereinafter called Lloyd's London), and on behalf of "Certain Underwriters at Lloyd's London" (hereinafter called Pacific Lloyd's). Lloyd's London had issued a certificate of excess insurance over the basic policy issued by Transport[1] to Oilfields, and Pacific Lloyd's had issued certificates of excess insurance over the basic policy issued by Continental to Phoenix.

After extensive oral argument the trial court concluded (1) that Oilfields, Phoenix and Mason are covered under the Continental and Pacific Lloyd's policies; (2) Oilfields, but not Phoenix or Mason, is covered under the Transport and Lloyd's London policies; (3) that the liability should be prorated among the insurers according to a formula set out in the judgment.

Continental, the appellant herein, contends that its basic policy provided no coverage for the liability here involved, either to Phoenix, to Oilfields or to Mason, both by reason of certain endorsements and exclusions attached to that

---

[1]Transport had also issued a policy (No. 46-002) of excess insurance over that provided by the Lloyd's London excess certificate.

policy and upon the theory that the liability which had attached to Phoenix was based solely on imputed negligence as a joint venturer, and not as an employer of Mason.[2] The trial court in the present suit found, among other things, that Mason was a general employe of Oilfields and a special employe of Phoenix, and that at the time and place of the accident he was "acting in the scope and course of his employment as such employee and agent"; Continental questions the sufficiency of the evidence to support the finding insofar as it refers to Phoenix. Transport (with Lloyd's London), although admitting coverage of Oilfields for any liability chargeable to it which arises from the accident, denies that any coverage was extended by Transport to Phoenix or to Mason. Transport, Oilfields, Phoenix and Leming all contend that the Continental policy (and Pacific Lloyd's excess certificates) extended coverage to Phoenix, Oilfields and Mason.

For reasons which are hereinafter developed we have reached the following conclusions:

1. Insofar as the issues now before us are concerned, Mason, as the negligent driver, bears the primary liability to Leming.

2. The Transport policy, together with its related excess insurance, provides $1,000,000 coverage to Mason as well as to Oilfields, an amount more than sufficient to pay the Leming award.

3. The Continental policy, together with its related excess certificates, covers neither Mason nor Oilfields.

4. Hence, there is no need to decide either (a) whether the evidence supports the trial court's determination that Mason was acting as an employe of Phoenix at the time of the accident, or (b) whether either the Continental or the Transport policy (and excess insurance) covers Phoenix.

5. Result: Transport and Lloyd's London must pay the entire award to Leming.

Where a judgment has been rendered against an employer for damages occasioned by the unauthorized negligent act of his employe, the employer may recoup his loss in an action against the negligent employe (*Popejoy* v. *Hannon* (1951), 37 Cal.2d 159, 173 [19] [231 P.2d 484]; *Bradley* v. *Rosenthal* (1908), 154 Cal. 420, 423 [97 P. 875, 129 Am.St. Rep. 171]; *Johnston* v. *City of San Fernando* (1939), 35 Cal.

---

[2]The liability of Pacific Lloyd's as excess insurer is, of course, dependent on Continental's liability under the basic policy issued to Phoenix.

App.2d 244, 246 [95 P.2d 147]; *Myers* v. *Tranquility Irr. Dist.* (1938), 26 Cal.App.2d 385, 389 [79 P.2d 419]; *Ledgerwood* v. *Ledgerwood* (1931), 114 Cal.App. 538, 542-543 [300 P. 144]; Rest., Restitution, 418-419, § 96; 35 Am.Jur. 530-531, § 101; 56 C.J.S. 502, § 79; see also *Aynes* v. *Winans* (1948), 33 Cal.2d 206, 208-209 [200 P.2d 533]); that is, as between employer and employe in such a situation, the obligation of the employe is primary and that of the employer secondary. Respondents cite *Consolidated Shippers, Inc.* v. *Pacific Emp. Ins. Co.* (1941), 45 Cal.App.2d 288, 293 [114 P.2d 34]; *Air Transport Mfg. Co.* v. *Employers' Liab. Assur. Corp.* (1949), 91 Cal.App.2d 129, 132 [204 P.2d 647]; *Employers Liab. Assur. Corp.* v. *Pacific Emp. Ins. Co.* (1951), 102 Cal.App.2d 188, 192 [227 P.2d 53]; and *Traders etc. Ins. Co.* v. *Pacific Emp. Ins. Co.* (1955), 130 Cal.App.2d 158, 165-166 [278 P.2d 493], as supporting a contrary view; such cases are broadly distinguishable on their facts but it would unduly extend this opinion and serve no useful purpose to individually discuss and differentiate them as any implications therein contrary to the long established rule above stated must be deemed disapproved.

 Under equitable principles of subrogation the insurer of the employer who has been compelled to pay the judgment against the employer may recover against the negligent employe or the employe's insurer. (*Canadian Indem. Co.* v. *United States F. & G. Co.* (1954, 9 Cir.), 213 F.2d 658, 659; see also *Maryland Cas. Co.* v. *Employers Mut. Liab. Ins. Co.* (1953), 208 F.2d 731; *United Pacific Ins. Co.* v. *Ohio Cas. Ins. Co.* (1949, 9 Cir.), 172 F.2d 836, 840 (note 5), 846-848.) Here, it is established that the negligent act upon which the Leming judgment is based was the unauthorized act of Mason who, it will be remembered, is not only a judgment debtor to Leming but is also a defaulted defendant in this proceeding. It follows that if Mason was covered with sufficient insurance to pay the total Leming judgment, then the insurance coverage of Oilfields and Phoenix becomes immaterial insofar as concerns the issues now involved. Consideration will therefore first be given to whether and to what extent Mason is covered by the two lines of policies, Continental and Transport.

 Copies of the insurance policies and excess certificates which were in effect at the time of the Leming accident were introduced into evidence by stipulations, not subject to con-

flicting inferences, and no parol evidence was offered in aid of construction. Therefore, construction of the policies is a matter of law. (*Western Coal & Mining Co.* v. *Jones* (1946), 27 Cal.2d 819, 826-827 [167 P.2d 719, 164 A.L.R. 685]; see also *Arenson* v. *National Automobile & Cas. Ins. Co.* (1955), 45 Cal.2d 81 [286 P.2d 816].)

The Continental policy, which is entitled "Comprehensive General—Automobile[3] Liability Policy," commences with "Item 1. Name of insured PHOENIX CONSTRUCTION Co., INC.", and in paragraph I of the printed "insuring agreements" identifies the primary protection as Coverages A. B, and C.[4] Coverage A, thus included in the printed policy form, extends coverage to Phoenix for bodily injury liability. An endorsement, numbered R6309202 and hereinafter referred to as No. 202, reads as follows: "It is agreed Oil Fields Trucking Company is added as an additional insured in connection with construction operations conducted as a joint venture with the Phoenix Constrcution Company, Inc.

"It is further agreed that this policy excludes coverage for all operations of Oil Fields Trucking Company other than construction operations conducted as a joint venture with Phoenix Constrcution Company, Inc."

A second endorsement, numbered R6309208 and hereinafter referred to as No. 208, reads: "It is agreed that *this policy does not apply to automobiles* owned, maintained or used by the Oil Fields Trucking Company, even though, they might be used in a joint venture operation with other named insureds." (Italics added.)

██ ██ Although if there is any ambiguity in an insurance policy it must be resolved against the insurer (*Arenson* v.

---

[3]The policy defines "automobile" as "a land motor vehicle."

[4]Such coverages read as follows: "Coverage A—Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person.

"Coverage B—Property Damage Liability—Automobile

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile.

"Coverage C—*Property Damage Liability—Except Automobile*

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

*National Auto. & Cas. Ins. Co.* (1955), *supra,* 45 Cal.2d 81, 83; *Coit* v. *Jefferson Standard Life Ins. Co.* (1946) 28 Cal.2d 1, 3 [168 P.2d 163, 168 A.L.R. 673]; *Fageol T. & C. Co.* v. *Pacific Indem. Co.* (1941), 18 Cal.2d 731, 747 [117 P.2d 661]), nevertheless if there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls. (*Fageol T. & C. Co.* v. *Pacific Indem. Co.* (1941), *supra,* p. 738; *Tarleton* v. *De Veuve* (1940), 113 F.2d 290, 297.) ▇ Likewise, under the provisions of section 1651 of the Civil Code,[5] the written or specially prepared portions of a contract control over those which are printed or taken from a form. The provisions of the two endorsements, as quoted above, are typewritten, while, as already mentioned, the insuring agreements are part of the printed policy form.

▇ Thus, the clear import of the two endorsements is that (No. 202) Oilfields is added as a second named insured, but only as to construction operations conducted as a joint venture with Phoenix, and (No. 208) that the policy does not apply to (i.e., provides no coverage for) liability arising out of the operation of automobiles owned, maintained or used by Oilfields, even though "used in a joint venture operation with other named insureds." It follows that the Continental policy (and excess certificates ancillary thereto) provided no coverage to Mason for the accident to Leming, which resulted from Mason's negligent operation of a truck owned by Oilfields. The suggestion of various of the respondents on appeal that certain of the other printed policy provisions[6] may be

[5]Section 1651: "Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded."

[6]Such provisions, found in paragraph III of the printed insuring agreements, read as follows so far as here material: "The unqualified word 'insured' includes the named insured and also includes . . . (2) under coverages A and B, any person while using . . . a hired automobile . . ., provided the actual use of the automobile is by the named insured or with his permission . . . [except that the] insurance with respect to any person . . . other than the named insured does not apply: . . . (d) with respect to any hired automobile, to the owner thereof or any employee of such owner. . . ."

It may be noted that even if respondents were successful in their contention that "hired automobile" includes the Oilfields' truck here involved, nevertheless it appears that exception (d) would deny coverage to Mason, the admitted employe of Oilfields.

construed to include Mason as an insured must likewise give way to the provisions of the endorsement excluding liability arising from the operation of vehicles owned by Oilfields, from coverage of the policy. An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected. (See *Coit* v. *Jefferson Standard Life Ins. Co.* (1946), *supra,* 28 Cal.2d 1, 11; *Long* v. *West Coast Life Ins. Co.* (1940), 16 Cal.2d 19, 23-24 [104 P.2d 646]; *Sampson* v. *Century Indem. Co.* (1937), 8 Cal.2d 476, 478-480 [66 P.2d 434, 109 A.L.R. 1162]; *Security T. & S. Bank* v. *New York Indem. Co.* (1934), 220 Cal. 372, 376-377 [31 P.2d 365]; *John G. Speirs & Co.* v. *Underwriters at Lloyd's, London* (1948), 84 Cal.App.2d 603, 605 [191 P.2d 124]; *Guidici* v. *Pacific Auto. Ins. Co.* (1947), 79 Cal.App.2d 128, 134 [179 P.2d 337]; *Boole* v. *Union Marine Ins. Co., Ltd.* (1921), 52 Cal.App. 207, 209 [198 P. 416]; *American Mut. Liability Ins. Co.* v. *Meyer* (1940, 3 Cir.), 115 F.2d 807.)

The next question is whether Mason had insurance coverage under the Transport line of policies. It is undisputed that at the time of the Leming accident Mason was an employe of Oilfields, that the Leming judgment was based upon an implied jury finding that in driving Oilfields' truck Mason was acting within the scope of his employment at the time of the accident, and that the trial court in the present litigation likewise found that he was acting within such scope. It is also undisputed that at the time of the accident Mason was exercising sole control and direction of the truck.

It now becomes essential to consider certain provisions of the basic Transport policy. Under Coverage Clause (1) Transport agrees "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay for damages, arising out of the occupation of the named insured, as a result of bodily injury . . . or death to persons or for damage to property of others . . ." Various endorsements attached to the policy state that it "is an Automobile Bodily Injury Liability and Property Damage Liability policy" and declare that the "Occupation of the named insured is MOTOR CARRIER FOR HIRE." Another endorsement provides that the "Name of the Insured . . . is amended to read: Oilfields Trucking Company and P. A. Phoenix and H. E. Phoenix, as co-partners only, jointly and not severally, doing business as Phoenix Brothers Garage and Storage Company [and] It is further agreed that the named insured is: CORPORATION -

Co-PARTNERSHIP.'' Under the heading ''CONDITIONS'' the policy provides: ''(3) DEFINITIONS (a) NAMED INSURED The term 'named insured' shall mean the insured named in the declarations. (b) INSURED The unqualified word 'insured' includes the named insured and also includes as respects Coverage Clause 1: (1) any partner, executive officer, *managing employee,* director or stockholder thereof while acting within the scope of his duties as such or in so far as he is or may be liable by reason of his occupying such position. (c) AUTOMOBILES The word 'automobile' shall mean a land motor vehicle, trailer or semi-trailer and its equipment . . . (6) FINANCIAL RESPONSIBILITY LAWS Such insurance as is afforded by this policy shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable *with respect to any such liability* arising out of the existence, ownership, maintenance or use of any automobile during the policy period, to the extent of the coverage and limits of liability required by such law.'' (Italics added.)

It is further to be noted (and the significance will later appear more clearly) that the basic policy prominently displays advice seemingly applicable to the person directly in charge of, operating, or ''managing'' the motor vehicle. Under the heading ''WHAT TO DO IN CASE OF ACCIDENT'' it admonishes: ''Stop, render aid. Place flags, flares, or post someone to warn other traffic—avoid other accidents. Get names and addresses of witnesses. If no eye witnesses, obtain names and addresses of first persons to arrive. Get license numbers of vehicles if persons refuse names. Report accidents involving injury (no matter how slight) immediately by telephone to our nearest claim office. Order photographs in all serious accidents; the Exchange will assume the cost. Be courteous—GOOD CONDUCT HELPS. Draw rough diagram of scene of accident showing position of vehicles or skidmarks; step off distances. This will assist in giving an accurate report. Protect your equipment or cargo from further damage or theft.'' Under the heading ''WHAT NOT TO DO IN CASE OF ACCIDENT'' it cautions: ''Do not admit responsibility; let the Exchange determine if you are legally responsible. Do not agree to pay anything, except for immediate First Aid treatment. In accidents involving death, do not talk nor give statements until you are represented by an attorney —you have this right under the law. Don't argue responsi-

bility for the accident. Don't make any verbal statements at the scene of accident regarding the accident. Statements you make may be used as evidence against you. Do Not Sign Anything, except for your insurance investigator. Be sure to identify the insurance investigator as representing *your* company, not someone else." (Italics added.)

At the times concerned Oilfields, by reason of its occupation, was subject to the Highway Carriers Act (Stats. 1935, ch. 223) and was required (§ 5) "to procure, and continue in effect during the life of the permit [issued by the Public Utilities Commission and without which Oilfields' operations would be unlawful], adequate protection . . . against liability imposed by law . . . for the payment of damages for personal bodily injuries . . ." Section 6 of the Highway Carriers Act further enacts that "The protection required under section 5 shall be evidenced by the deposit with the Railroad [now Public Utilities] Commission, covering each vehicle used or to be used under the permit applied for, of a policy of public liability and property damage insurance . . . or of a bond of a surety company . . . or of a personal bond . . ."

At the times concerned Oilfields was also subject to California's general automobile financial responsibility law. That law is found in sections 410 through 423.1 of the Vehicle Code. (See *Escobedo* v. *State* (1950), 35 Cal.2d 870, 878 [222 P.2d 1].) Sections 410-418.5, which comprise chapter 2, cover the matter of establishing responsibility after an accident and an unpaid judgment, while sections 419-423.1, which comprise chapter 3, provide for such a showing after the accident and before any judgment, all directly intended *for the benefit of drivers and owners of motor vehicles* as a means of forestalling suspension of the license of the driver and of the registration of the vehicle or vehicles, and, more fundamentally, designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others. ▮ Such a law is remedial in nature and in the public interest is to be liberally construed to the end of fostering its objectives. (See *Wheeler* v. *O'Connell* (1937), 297 Mass. 549 [9 N.E.2d 544, 111 A.L.R. 1038, 1041].) As said by Mr. Justice Heydenfeldt for this court long ago, and still the law, "The rule of law in the construction of remedial statutes requires great liberality, and wherever the meaning is doubtful, it must be so construed

as to extend the remedy.'' (*White* v. *Steam-tug Mary Ann* (1856), 6 Cal. 462, 470 [65 Am.Dec. 523] ; see also *Cullerton* v. *Mead* (1863), 22 Cal. 96, 98; *Cormerais* v. *Genella* (1863), 22 Cal. 116, 125; *Davis* v. *Hearst* (1911), 160 Cal. 143, 188 [116 P. 530].)

Under the unpaid judgment provisions of chapter 2, the owner of a motor vehicle which has been operated with his consent (here, Oilfields, whose truck was operated by Mason) suffers suspension of the registration of the vehicle (Veh. Code, § 410, subd. (c) ; *Sheehan* v. *Division of Motor Vehicles* (1934), 140 Cal.App. 200, 205 [35 P.2d 359]) unless he files ''an affidavit stating that at the time of the accident . . . he was insured, that the insurer is liable to pay such judgment, and the reason, if known, why such insurance company has not paid such judgment. He shall also file the original policy of insurance or a certified copy thereof, if available,'' and if his showing is satisfactory his registration certificate will not be suspended. (Veh. Code, § 411.5.) Under section 411 the procedure is made applicable to successive accidents and judgments.

Section 415 is entitled ''Requisites of Motor Vehicle Liability Policy,'' and provides: '' (a) A 'motor vehicle liability policy,' as used *in this code* means a policy of liability insurance . . . to or for the benefit of the person named therein as assured, which policy shall meet the following requirements:

'' (1) Such policy shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby intended to be granted.

'' (2) Such policy shall insure the person named therein *and any other person* [here, Mason] *using or responsible for the use of said motor vehicle or motor vehicles with the express or implied permission of said assured.*

'' (3) Such policy *shall insure every said person* on account of the . . . operation of every motor vehicle therein covered . . . against loss from the liability imposed by law arising from such . . . operation to the extent . . . with respect to each such motor vehicle, of five thousand dollars ($5,000) for bodily injury to or death of each person as a result of any one accident and, subject to said limit as to one person, the amount of ten thousand dollars ($10,000) for bodily injury to or death of all persons as a result of any one accident . . .

"(c) Any such policy may grant any lawful coverage in excess of or in addition to the coverage herein specified or contain any agreements, provisions or stipulations not in conflict with the provisions of this code and not otherwise contrary to law. . . ." (Italics added.)

Thus, although the financial responsibility statute does not in so many words make mandatory the procuring of a liability insurance policy prior to the first accident and judgment, the Highway Carriers Act does. Furthermore, an employer who is a highway carrier, as a practical matter in the ordinary course of business, in order to protect against the possibility of suspension in case of a judgment against himself and his employe, must have in force a policy complying with the requisites of section 415. (See Code Civ. Proc., § 1963, subds. 4, 20.) Here, of course, it is not disputed that the Transport liability insurance policy was executed; the only dispute with which we are seriously concerned is whether and to what extent the policy covered Mason in his operation of Oilfields' truck at the time of the Leming accident.

It is the position of Transport (among other contentions) that California's financial responsibility laws do not require that Mason's liability be covered, that section 415 of the Vehicle Code has no application to the present case, and that in order to avoid the forfeiture or suspension provisions of the law by evidence of insurance it is not necessary for the owner of a motor vehicle to show that the personal liability of his employe is insured. We have given careful consideration to all of Transport's arguments.[7] It is, however, our conclusion reached in the light of all pertinent provisions of

---

[7]We note in this connection that under the provisions of chapter 3 (Veh. Code, §§ 419-423.1), as they existed on the date of the accident here involved (July 10, 1951), it is made the duty of the driver, and in case the driver was permissively operating "a motor vehicle owned, operated or leased by" his employer then it is the duty of the employer rather than of the driver (§ 419), to report to the department of motor vehicles any accident which resulted in personal injury or death; except that the employer need not make such a report if the vehicle involved in the accident "is owned or operated by any person or corporation who has filed with the department a certificate of an insurance carrier or bonding company that there is in effect a policy or bond meeting the requirements of Section 422.6 and when such insurance policy or bond was in full force and effect in respect to such vehicle at the time of the accident." Unless a driver can meet the pre-accident security provisions laid down in chapter 3, he is required to deposit security or suffer suspension of driving privileges in this state, except that if he was permissively driving his employer's motor vehicle then the suspension provisions do not apply to the driver but instead do apply to the employer; unless the employer can meet the pre-accident security provisions (i.e., insurance policy, or bond) in such case, he is required to deposit security or suffer the suspension of "registration of all vehicles not

the law and the terms of the policy, that Transport's coverage fairly includes Mason's operation of Oilfields' truck and that its liability is direct to Mason as an insured as well as to Oilfields as a named insured.

■ It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. (*Arenson* v. *National Auto. & Cas. Ins. Co.* (1955), *supra*, 45 Cal.2d 81, 83; *Coit* v. *Jefferson Standard Life Ins. Co.* (1946), *supra*, 28 Cal.2d 1, 3; 5 Am.Jur. 790, § 507.) ■ If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. (*Fageol T. & C. Co.* v. *Pacific Indem. Co.* (1941), 18 Cal.2d 748, 751 [117 P.2d 669].) ■ If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against (*Fageol T. & C. Co.* v. *Pacific Indem. Co.* (1941), 18 Cal.2d 731, 746-747 [16, 17] [117 P.2d 661]; *Ocean etc. Corp., Ltd.* v. *Industrial Acc. Com.* (1924), 194 Cal. 127, 132 [228 P. 1]; *Miller* v. *United Ins. Co.* (1952), 113 Cal.App.2d 493 [248 P.2d 113]; *Pendell* v. *Westland Life Ins. Co.* (1950), 95 Cal. App.2d 766, 770 [214 P.2d 392]; see also *Christoffer* v. *Hartford Acc. etc. Co.* (1954), 123 Cal.App.2d Supp. 979 [267 P.2d 887]), the amount of liability (*Hobson* v. *Mutual Benefit H. & A. Assn.* (1950), 99 Cal.App.2d 330, 333 et seq. [221 P.2d 761]; see also *Narver* v. *California State Life Ins. Co.* (1930), 211 Cal. 176, 180 et seq. [294 P. 393]) or the person or persons protected (*Olson* v. *Standard Marine Ins. Co.* (1952), 109 Cal.App.2d 130, 135 [1, 5] [240 P.2d 379]; see

covered by insurance . . . owned, operated or leased by him . . ." (§§ 420, 421.)

Section 422.5 declares that exemption from the requirements of posting security following an accident may be established by satisfactory proof to the department (a) that the owner had "in effect with respect to the driver or the motor vehicle involved in the accident . . . an automobile liability policy or bond . . . [which] shall meet the requirements of Section 422.6"; (b) that the driver, if not the owner, had in effect a policy or bond covering his own driving; "(c) That such liability as may arise from the driver's operation of the motor vehicle involved in the accident is, in the judgment of the department covered by some form of liability insurance or bond which complies with the requirements set forth under Section 422.6."

Section 422.6 sets forth certain qualifications of the insurance company and requires policy limits of not less than $5,000 for injury or death of one person in any one accident, $10,000 for two or more persons in the same accident, and $1,000 property damage.

also *Island* v. *Fireman's Fund Indem. Co.* (1947), 30 Cal.2d 541, 543, 548 [184 P.2d 153, 173 A.L.R. 896]; *Sly* v. *American Indem. Co.* (1932), 127 Cal.App. 202 [15 P.2d 522]), the language will be understood in its most inclusive sense, for the benefit of the insured. ■ Here we have the seemingly explicit provision of section 415 of the Vehicle Code that "A 'motor vehicle liability policy,' as used in this code means a policy . . ., which policy shall meet the following requirements: . . . (2) Such policy shall insure the person named therein and any other person using or responsible for the use of said motor vehicle . . . with the . . . permission of said assured," and coupled with that are the provisions of the Highway Carriers Act and the language of the policy, some of it as already emphasized being apparently directed primarily to the driver of the vehicle, admonishing him as to his duties upon the happening of an accident, and in another place declaring that the coverage provided "shall comply with the provisions of the motor vehicle financial responsibility law . . . which shall be applicable with respect to *any such liability* arising out of the existence . . . or use of any automobile . . . to the extent of the coverage and limits of liability required by such law." (Italics added.) That language cannot properly be construed to mean minimum coverage or minimum limits; rather, it must be interpreted as providing full or maximum coverage in both aspects insofar as encompassed by the law and not exceeding the clear limitations of the contract.

■ We have hereinabove noted the contract provision expressly stating that "The unqualified word 'insured' includes the named insured and also as respects Coverage Clause 1 [the coverage clause here involved] . . . any partner, executive officer, managing employee, director or stockholder thereof while acting within the scope of his duties as such . . ." Obviously the term "managing employee" is used for generic inclusion. 55 Corpus Juris Secundum, page 2, tells us that "managing" means "To have under control and direction; to control and direct; . . . to guide." Webster's New International Dictionary gives the same meanings. We need not go farther. It is undisputed that Mason at the time of the Leming accident was Oilfields' employe and that he had Oilfields' truck under his control and direction; he was guiding it and he was acting within the scope of his duties. In respect to the several tons of equipment entrusted to him he was Oilfields' sole managing employe. The very

identities and relationships and the diversified characters of the several other classes listed in the inclusory clause all lend support to the view that the words "managing employee" as used therein include an employe entrusted with the duties and responsibilities and performing the functions of Mason under the circumstances shown. The most that could be said in favor of construing the generic term as not including one in the position of Mason is that the term is uncertain in scope and signification. This argument, however, for reasons given in the authorities already cited, must be resolved against the insurer and in favor of coverage. We must therefore conclude, as already indicated, that the Transport policy insured Mason in his operation, direction and control of the Oilfields truck here involved.

 With respect to the extent or limits of coverage of Mason, it has already been noted that condition (6) of the basic Transport policy states, "to the extent of the . . . limits of liability required by such law" and that such language must be given its full and inclusive, as opposed to a restrictive, meaning. The primary Transport policy, Number 46-001, is limited to $5,000 for injury or death of one person and $10,000 for two or more persons injured or killed in any one accident. Lloyd's London excess certificate 46-C3-32 provides insurance in the amount of $40,000 excess over $10,000 "against the hazards and perils of Comprehensive Bodily Injury, Property Damage and Cargo Liability Coverage as insured under policies issued by the Transport Indemnity Company . . . to Oilfields Trucking Company, *et al.* and other persons . . . named as insureds under said policies, all hereinafter called the Assured." The certificate further declares that "It is the intention of the parties that under this Policy the Assured is to be indemnified up to $40,000.00 as aforesaid, against all liability in excess of the liability of the Primary Insurer under its policies.

"It is agreed that this Policy is subject to the same Warranties, Terms and Conditions (except as regards . . . the amount and limit of Liability . . .) as are contained in, or as may be added to said Policy of the Primary Insurer."

Inasmuch as Mason was covered by the primary Transport policy (No. 46-001, with limits of $5,000 and $10,000), the Lloyd's London certificate (46-C3-32) thus increases his coverage by the amount of $40,000.

Transport policy 46-002 furnishes additional excess coverage "over $50,000.00" in an amount of $950,000. The "spe-

cial excess endorsement'' provides, ''Notwithstanding anything in the policy to the contrary, it is further agreed that this policy is subject to the same warranties, terms and conditions (except as regards . . . the amount and limit of liability . . .) as are contained in, or as may be added to the primary policy issued by . . . Transport . . .'' Thus, Mason's coverage was increased by this policy to an aggregate total of one million dollars, obviously sufficient to meet the Leming judgment of less than a quarter of a million.

Inasmuch as the Transport line of policies did, and the Continental line did not, afford personal coverage to Mason, the driver upon whom ultimate responsibility for the Leming judgment otherwise devolves, it follows that no further controversy remains to be decided as between the other parties to this litigation. It may further be noted that placing the responsibility for the insurance coverage squarely upon the carriers for Mason and for his employer, the owner of the truck he was driving, not only accords with the purposes and intents of the policy provisions and of the financial responsibility law, but appears also to accomplish justice as among all the parties involved in this declaratory suit.

One final matter remains for mention. Plaintiff-appellant, Continental, has filed in this court an application for leave to produce additional evidence (see rule 23, subd. (b), Rules on Appeal) which it avers will show that full payment of the Leming judgment has been made by or on behalf of Phoenix, Oilfields, and Transport; that full satisfaction of such judgment has been entered of record; and that by reason of such facts and upon various asserted legal principles any theory for contribution by Continental has become unenforceable. In view of our conclusions as stated hereinabove, no useful purpose would be served in receiving such evidence, and the application to produce the same will be denied.

Because there will be no factual issues to be determined after a reversal of the judgment, since the errors of the trial court were of law only, it is appropriate to reverse with directions. (Code Civ. Proc., § 53; *Estate of Davis* (1936), 8 Cal.2d 11, 12 [62 P.2d 582, 63 P.2d 827]; *Wixom* v. *Davis* (1926), 198 Cal. 641, 645 [246 P. 1041]; *Stauter* v. *Carithers* (1921), 185 Cal. 160, 164 [196 P. 37].)[8]

[8]The fact that the Pacific Lloyd's group (providers of the excess certificates over the basic Continental policy issued to Phoenix) did not appeal does not preclude reversal as to them, for the phase of the judgment relating to their alleged liability is so inextricably interwoven

Plaintiff's application to produce additional evidence is denied; the judgment is reversed with directions to the trial court to amend its conclusions of law and enter judgment declaring the relative and respective rights and obligations of the parties to this action in accordance with the views expressed in this opinion.

Gibson, C. J., Traynor, J., Spence, J., and McComb, J., concurred.

CARTER, J.—I dissent.

I agree that the Transport insurance covered Mason and Oilfields but do not agree that the Continental insurance did not cover Oilfields and Mason. The majority opinion holds that Mason and Oilfields are not covered by Continental because of an endorsement on the Continental policy which it says excludes the operation of automobiles.

Oilfields and Phoenix were engaged in a joint venture. Continental issued a policy to Phoenix as the named insured. The policy was mainly concerned with coverage of liability arising out of the operation of automobiles. *At the time the policy was issued* the endorsements here involved were attached. Both endorsements 202 and 208 were added at the same time, one following the other in attachment to the policy and *both were typewritten*. They read (202): "It is agreed Oil Fields Trucking Company is added as an additional insured in connection with construction operations conducted as a joint venture with the Phoenix Construction Company, Inc.

"It is further agreed that this policy excludes coverage for all operations of Oil Fields Trucking Company other than construction operations conducted as a joint venture with Phoenix Construction Company." And 208 read: "It is agreed that this policy does not apply to automobiles owned, maintained or used by the Oil Fields Trucking Company, even though, they might be used in a joint venture operation with other named insureds." These endorsements must be read together for they deal with the same subject. Inasmuch as they are *both* typewritten they are on an equal footing and one does not control over the other. Hence the rule, that

with the rest of the judgment that a complete reversal is necessary in the interest of justice. (See *Blache* v. *Blache* (1951), 37 Cal.2d 531, 538 [233 P.2d 547].)

the typewritten controls over the printed part, relied upon by the majority, is not applicable.

Endorsement 202 expressly makes Oilfields a named insured along with Phoenix insofar as the two are engaged in a joint venture. Hence Oilfields is as fully covered as Phoenix, that is, to the same extent as if it had been named along with Phoenix in the policy, the main purpose of which was to cover automobile operations. Then comes endorsement 208. It is possible to interpret that endorsement to exclude operation of trucks owned by Oilfields and used in the joint venture as is done by the majority. However, it may be interpreted to be in direct conflict with 202 on the basis that 202 extends coverage to Oilfields as an insured and then 208 purports to take that coverage away. So viewed, the rule of construction against the insurer would require that 208 be ignored.

There is another wholly reasonable construction which limits 208 to joint ventures between Oilfields and Phoenix and others who might be insureds. It will be recalled that in making Oilfields an insured, 202 expressly mentions and makes it such an insured in joint venture construction operations between Oilfields and Phoenix by that name. Endorsement 208 then says that, as to automobile operations by Oilfields, the policy does not extend *even though* they might be used in a joint venture with *other* insureds. It is reasonable to interpret "even though" as "if" (*May* v. *Missouri Pac. R. Co.*, 143 Ark. 75 [219 S.W. 756, 757]; Webster's New Inter. Dict. (2d ed.), pp. 885, 77) and "other" insured as "different from that which has been specified" (*Robinson* v. *First Nat. Life Ins. Co.*, (La.App.) 10 So.2d 249, 251; *In re Nelson's Estate*, 152 Misc. 245 [273 N.Y.Supp. 268]; Webster's New Inter. Dict. (2d ed.), p. 1729). Endorsement 208 then reads that the policy does not cover automobiles owned by Oilfields if they are used in joint venture operations with different insureds. We already have a joint venture expressly named in 202. A different one then would be a venture between Oilfields and some insured other than Phoenix. Hence where, as here, the liability arose out of the Phoenix-Oilfields joint venture and none other, 208 is not applicable.

Oilfields being a named insured, then Mason, its employee, the driver of the truck is clearly covered because the policy states that the insured includes "any person while using an owned automobile" if the use is by the insured "or with

his permission." An "owned automobile" is one owned by the insured. Here the truck was owned by Oilfields, the insured, and was not hired from anyone.

The rule stated in *Pendell* v. *Westland Life Ins. Co.*, 95 Cal.App.2d 766, 770 [214 P.2d 392], is particularly appropriate: "Exceptions in a contract of insurance which purport to limit the risk assumed by the insurer in the general provisions thereof are to be construed *most strongly against the insurer* and in favor of the insured *and if susceptible of two meanings, the one most favorable to the insured is to be adopted.* (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421, 424 [213 P. 42, 26 A.L.R. 123]; *Bayley* v. *Employers' etc. Corp.*, 125 Cal. 345, 352 [58 P. 7].) The insurer is bound to use such language as to make the exceptions and provisions of the contract clear to the ordinary mind; and in case it fails to do so, any uncertainty or reasonable doubt is to be resolved against it. (*Pacific etc. Co.* v. *Williamsburg etc. Co.*, 158 Cal. 367, 370 [111 P. 4].)" (Emphasis added.)

In accordance with that rule, endorsement 208, being susceptible of the construction that it does not take away the coverage given by 202, must be so construed.

I therefore agree with the holding of the trial court that since Mason and Oilfields are covered by Continental as well as Transport, the former as well as the latter is liable for the payment of the judgment recovered by Leming against Mason, Oilfields and Phoenix within the limits of their respective policies.

I would therefore affirm the judgment.

The petition of respondents Oilfields Trucking Co., Transport Indemnity Co., and Underwriters at Lloyd's London for a rehearing was denied May 29, 1956. Shenk, J., and Carter, J., were of the opinion that the petition should be granted.