428 F.2d 499
 FIRST NATIONAL BANK OF CHICAGO, as Guardian of the Estates
of Amal Fakhri, Ahmed Fakhri,
v.
The FIDELITY AND CASUALTY COMPANY OF NEW YORK,
Defendant-Appellant, SemiramisFakhri, Omar Fakhri and Aza
Fakhri, Minors, Amal Fakhri, Ahmed Fakhri, Semiramis Fakhri,
Omar Fakhri and Aza Fakhri, Minors, by First National Bank
ofChicago, asGuardian of Their Estates, Plaintiffs-Appellees.
 No. 17571.
 United States Court of Appeals, Seventh Circuit.
 July 8, 1970, Rehearing Denied Aug. 25, 1970.
 
 1
 John R. Caffrey, James T. Ferrini, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for defendant-appellant.
 
 
 2
 Harry A. Ash, John J. Kennelly, William James Harte, Chicago, Ill., for plaintiffs-appellees; Roger J. Boylan, Howard S. Chapman, A. L. Cronin, Chicago, Ill., of counsel.
 
 
 3
 Before KNOCH and CUMMINGS, Circuit Judges, and STECKLER, District judge.[1]
 
 
 4
 STECKLER, District Judge.
 
 
 5
 Following the death of Suzy E. P. Fakhri resulting from an airplane crash, First National Bank of Chicago, as guardian of the estates of her minor children, sued The Fidelity and Casualty Company of New York (Fidelity) upon a policy of airline trip insurance. Fidelity refused to pay the policy benefits to the minors' estates claiming that the policy did not cover the fatal accident. Both parties moved for summary judgment. The District Court granted plaintiffs' motion, denied defendant's motion and entered summary judgment against Fidelity for $75,000.00The face amount of the policy, together with interest from the date of the insured's death. The District Court also awarded plaintiffs attorneys' fees in the amount of $18,750.00. From this judgment Fidelity appeals.
 
 
 6
 On August 21, 1961, the decedent purchased from Air France a round trip airline ticket which set forth the following itinerary: Chicago-Paris-Beiruting London-Chicago. Before departing Chicago on August 23, 1961, Mrs. Fakhri purchased the policy of flight insurance. The policy covered the first one-way trip taken after the purchase of the policy, unless a round trip ticket were purchased before departure.[2] There was space on the policy to insert the insured traveler's point of departure and destination and a place to indicate whether a round trip was being taken, so that return coverage could be obtained. The policy provided that in case of a change of itinerary after the original ticket was purchased, coverage of the new itinerary would be provided if the original ticket were exchanged for a new one, the point of departure were the same and some portion of the original itinerary were covered by the new itinerary.[3]
 
 
 7
 The undisputed facts establish that Mrs. Fakhri departed Chicago and flew, by way of Paris, France, to Beirut, Lebanon, to join her husband where she remained with him for approximately three weeks. She then flew to London, England, and upon her arrival there she entrained for Manchester, England, to visit relatives. While in Manchester Mrs. Fakhri and her sister went to visit their father in Leicester, a city about seventy-five miles away. Upon her return to Manchester, Mrs. Fakhri received a cable from her husband asking her to meet him in Paris where they would embark on a trip to Casablanca, Morocco. Mrs. Fakhri then called her mother in Chicago to inquire about her children and to ask if it were all right that she undertake the trip to North Africa with her husband instead of returning to Chicago. With her mother's encouragement she emplaned for Paris where she joined her husband and there purchased from Air France the one-way ticket for the flight to Morocco.
 
 
 8
 The primary issue presented by this appeal is whether the contract of insurance provided coverage to the plaintiffs' decedent under the circumstances of her death. Fidelity contends that the decedent was on a 'side trip' which was not covered by the policy. Plaintiffs contend, and the District Court held, that notwithstanding the contract's provisions, the decedent's 'reasonable expectation' of coverage was sufficient to subject Fidelity to liability.
 
 
 9
 Under Illinois law, which we are bound to follow in this case, the terms of a written contract determine the rights of parties thereto. This applies also to flight insurance contracts. See Mutual of Omaha Insurance Co. v. Russell, 402 F.2d 339 (10th Cir. 1968); Thompson v. Fidelity and Casualty Company of New York, 16 Ill.App.2d 159, 148 N.E.2d 9 (1958).
 
 
 10
 An insurance company has the right to limit coverage on a policy it issues and when it has done so, the plain language of the limitation must be effectuated. Dreher v. Aetna Casualty & Surety Co., 83 Ill.App.2d 141, 226 N.E.2d 287 (1967); Thompson v. Fidelity and Casualty Company of New York,supra; Continental Casualty Co. v. Phoenix Construction Co., 46 Cal.2d 423, 296 P.2d 801 (1956); Crosse v. Supreme Lodge Knights and Ladies of Honor,254 Ill. 80, 98 N.E.2d 261 (1912).
 
 
 11
 The District Court was in error in finding that the plaintiffs' decedent was covered by the policy simply because she reasonably expected coverage. If decedent were afforded coverage by the policy in question, then such coverage must be found within the terms of the policy. We reject Steven v. Fidelity and Casualty Company of New York, 58 Cal.2d 862, 27 Cal.Rptr. 172, 377 P.2d 284 (1962), cited and relied on by the plaintiffs, in so far as it deems the reasonable expectation of the insured as controlling the policy's express terms.
 
 
 12
 Coverage in this case depends on whether at the time of the fatal accident decedent was on the first one-way or round trip insured by the policy.
 
 
 13
 The record before us shows that at the time Mrs. Fakhri journeyed to meet her husband in Paris she had departed from her originally scheduled itinerary. The record strongly suggests that there was a high probability for further travel aside from the original itinerary after the trip to Morocco. The deposition testimony of the decedent's sister, Bridget Waltmann, and of the decedent's mother, Suzanne Hogan, suggesta that Mrs. Fakhri contemplated return trips with her husband to Beirut and to London before returning to Chicago. The demands of her husband's business and a desire to visit further with relatives were among the factors motivating the planning of additional travel. Mrs. Fakhri still retained the London to Chicago portion of her ticket.
 
 
 14
 There is nothing in the record to indicate that the decision to return to Chicago had been made when Mrs. Fakhri purchased her one-way Air France ticket from Paris to Morocco.
 
 
 15
 At the time of Mrs. Fakhri's death she was not traveling on a ticket covering the whole of her trip as required by the insuring clause of the policy. Nor had she exchanged her original ticket for a new one as required by the substitute trip clause of the policy. When, as here, the insured abandoned the originally scheduled itinerary, the new itinerary could be brought within the policy's coverage only by the exchange of the original ticket for another ticket, some portion of the trio covered by the substituted ticket being the same as that covered by the ticket for the first airline trip. Appellees, relying on Fidelity and Casualty Company of New York v. Smith, 189 F.2d 315 (10th Cir. 1951), contend that the exchange requirement is a meaningless act. However, the court in Fidelity and Casualty Company of New York merely held that such a requirement would not deprive the insured of coverage where it was impossible to fulfill that requirement. The court took no position on whether the policy would have been in force had exchange been possible. Here the decedent purchased the ticket for the fatal flight from the carrier with which she had scheduled her original itinerary; there would have been no difficulty in complying with the exchange requirement. For these reasons we hold that the decision in Fidelity and Casualty Company of New York is not controlling.
 
 
 16
 We are in accord with the reasoning of the District Court in Best v. Continental Casualty Co., 272 F.Supp. 252 (N.D.Cal.1966), construing an insuring clause similar to the clause now before this court, that:
 
 
 17
 'The * * * clauses are designed to assure that coverage will be extended to those flight arrangements which were contemplated and purchased by the insured prior to leaving the point of departure * * *. The policies clearly do not extend coverage to side trips purchased away from the point of departure and outside the original itinerary.' 272 F.Supp. at 255.
 
 
 18
 The District Court in the Best case noted, as defendant here asserts, that the purpose of these restrictive clauses is to control the number of individual flights to which the insurance extends and render them readily identifiable. Subject to the substitute trip provisions of the policy, the insurer contracts to extend coverage only to those trips scheduled, before departure, upon a ticket which covers the whole of the airline trip. Side trips are not afforded coverage.
 
 
 19
 From the undisputed facts in this case we conclude that Mrs. Fakhri was not traveling on the first insured one-way or round trip at the time of her death, but rather was on a side trip not scheduled in her original itinerary and therefore was not within the insurance policy's coverage.
 
 
 20
 The order of the District Court granting summary judgment to plaintiffs is reversed and the cause remanded with directions to enter summary judgment for the defendant, The Fidelity and Casualty Company of New York. It is unnecessary for us to consider the award of attorneys' fees to plaintiffs since they are no longer entitled to any part of them by reversal of this matter.
 
 
 
 [1]
 William E. Steckler, Chief Judge of the United States District Court, Southern District of Indiana, is sitting by designation
 
 
 [2]
 The Insuring Clause of the policy provided: 'The Company will pay the benefits specified below if during the term of this policy the insured suffers loss resulting directly * * * from accidental bodily injury * * * during the first one way or round airline trip taken by the insured after the purchase of this policy on Aircraft Operated by a Certificated Scheduled Air Carrier as defined below from the Point of Departure to the Destination, both shown above, and return if round trip ticket is obtained before departure, provided that at the time that the insured sustains such injury he is traveling on a transportation ticket or pass covering the whole of said airline trip, issued to him for transportation on an aircraft operated by a certificated scheduled air carrier.'
 
 
 [3]
 The substitute trip provision of the policy provided: 'In a case of a change in the itinerary of said first airline trip referred to in Section 1 above, following the issuance of this policy, the insurance afforded as set forth in Section 1 above shall no longer apply on the original itinerary but shall apply on the new itinerary in the same manner and to the same extent as it would have applied on the original itinerary, provided that (1) the transportation ticket or pass issued to the insured for said first airline trip has been exchanged for another ticket or pass issued for transportation on an aircraft operated by a certificated scheduled air carrier on the substituted trip, and (2) the Point of Departure is the same as that shown above, and (3) some portion of the trip covered by the substituted ticket is the same as that covered by the ticket or pass for the first airline trip referred to in Section 1 above.'