## FIDELITY & CASUALTY CO. OF NEW YORK v. SMITH.

### No. 4209.

United States Court of Appeals
Tenth Circuit.

May 10, 1951.

Rehearing Denied June 4, 1951.

Pearce Rodey, Albuquerque, N. M. (Don L. Dickason, William A. Sloan, Frank M. Mims and Jackson G. Akin, all of Albuquerque, N. M., on the brief), for appellant.

Everett M. Granthan, Albuquerque, N. M. (Howard C. Bratton, Albuquerque, N. M., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This appeal involves the construction of an airplane round trip insurance policy, issued to Joe S. Smith by appellant, The Fidelity and Casualty Company of New York. No authorities are cited and our search has failed to reveal any in which the construction of such a policy, with respect to the question before us, has been before the courts.

On November 9, 1949 Joe S. Smith purchased a round trip airplane ticket from Trans World Airlines (TWA) at Albuquerque, New Mexico, to Washington, D. C., and return, via TWA. He began his journey on November 19, 1949. On that day he purchased the insurance policy in question in the sum of $20,000.00 from a vending machine at the Albuquerque Airport. The policy covered injuries sustained only during the first round trip made, with or without stopovers.[1] So far as

1. Pertinent provisions of the policy are: "The insurance afforded hereunder shall apply only to such injury sustained during the first one-way trip, or in the event of the purchase by the Insured of a round trip transportation ticket at the point of departure shown on said application, during the first round trip made, in either event with or without stopovers, after the day and hour and from the point of departure to the point of destination shown on such application, and shall commence at said day and hour and shall terminate either upon completion of said trip or upon expiration or surrender for refund or credit of the transportation ticket issued to the Insured for such trip, but in no event shall this insurance extend beyond a period of thirty days, nor shall it extend to loss sustained outside of the confines of the geographical area composed of the Continental United States and that portion of the Dominion of Canada which is within 150 miles of the international boundary between the United States and Canada, or the geographical area composed of the Territory of Hawaii as follows: (a) While boarding, riding as a passenger in alighting from or coming in contact with any airplane operated on a regular or special or chartered trip by a scheduled airline maintaining regular, published schedules and licensed for the carrying of passengers by the duly constituted governmental authority having jurisdiction over civil aviation of the country whose registry the air-craft bears, (b) While riding in or on a conveyance except a conveyance under the complete directions of the Insured, provided by or arranged for, directly or indirectly, by an established airline or the governmental authority controlling an established airport, either for the transportation of airline passengers between the airport and the city which such airport serves, preceding flight departure or following flight arrival at such airport, or for the transportation of said passengers if necessitated by an interruption or temporary suspension of scheduled air-

material the protection afforded commenced with the beginning of the outward trip and terminated upon completion of the round trip. It covered the insured while riding as a passenger in any airplane operated on a regular trip by scheduled air line, maintaining regular, published schedules. It provided that, if the original transportation ticket was exchanged for another ticket by a scheduled air line, it should cover all or any part of the trip specified in the original transportation ticket. The insurance applied to the trip for which the substitute ticket was issued in the same manner and to the same extent that it would have applied, had the original transportation ticket been used throughout.

Smith had just been employed as an expert consultant by the War Claims Commission, with headquarters in Albuquerque. He was called to Washington for a short course of instruction, at the conclusion of which he was to return to Albuquerque. He arrived safely in Washington via TWA, using the outbound portion of the round trip ticket. Just before he was to have returned to Albuquerque, a problem arose in Dallas, Texas, and it was arranged that on his way back he, accompanied by David N. Lewis, a member of the commission, should go to Dallas to consider the problem there and that Smith then should proceed on to Albuquerque and Lewis would return to Washington. Smith had nothing to do with the purchase of the ticket from Washington to Dallas. The tickets for both Smith and Lewis were purchased by a commission procurement officer. Both tickets were round trip tickets via American Air Line to Dallas and return. The purchase of a round trip ticket for Smith was an error, not detected in time to make an exchange and the commission intended to turn in the unused part of the Smith ticket and get a refund thereon. Smith procured an additional policy of $10,000.00 insurance covering the Dallas flight. This policy was identical with the one issued in Albuquerque.

En route to Dallas, the plane on which Smith and Lewis were riding, crashed and burned, killing all persons aboard. Appellant paid the $10,000.00 policy but denied liability on the $20,000.00 policy issued in Albuquerque. This suit was instituted to recover the additional sum of $15,000.00[2] Judgment was entered for the plaintiff and this appeal followed.

While appellant contends that Smith was not making the return portion of a round trip flight between Albuquerque and Washington at the time he was killed, its real contention seems to be that he was not at the time of his death within the coverage of the Albuquerque policy, because he was not traveling on a trip made on the ticket purchased in Albuquerque, or a ticket issued in exchange therefor.

The court's finding that Smith was at the time of his death engaged on the re-

line service before arrival at destination, or (c) While awaiting transportation at any established airport, or (d) While occupying any premises at which meals or lodging are provided for the Insured, where the expense of such meals or lodging is included in the air transportation fare, or is paid by an established airline, or (e) In consequence of rescue operations or exposure to the elements, following a forced landing or an emergency termination of flight of the airplane in which the Insured is being transported. If within one year after the date of the disappearance or wrecking of an aircraft in which the Insured was a passenger, his body has not been found, it shall be presumed the Insured suffered loss of life resulting from bodily injury affected through accidental means.

If the original transportation ticket held by the Insured is exchanged for another ticket issued by a scheduled airline, covering all or any portion of the trip specified in the original transportation ticket, this insurance shall apply to the trip for which the substituted ticket is issued in the same manner and to the same extent that it would have applied had the original transportation ticket remained in effect. The company will return to the Insured on demand the premium for this policy in the event that, because of cancellation of the flight by the airline, no part of said trip is made within the period covered by this policy."

2. This class of policy provides that $25,000.00 shall be the maximum liability for any one passenger.

turn portion of his round trip by commercial air line finds ample support in the record. It is also clear that in procuring the American Air Line ticket from Washington to Dallas, the original TWA ticket was not in fact surrendered and exchanged for the American Air Line ticket. The precise question then is—did the failure to manually exchange the original TWA ticket for the American Air Line ticket to Dallas void the policy, notwithstanding its provisions granting the insured the privilege of returning by substituted qualified air line travel, and affording him the same protection he would have had, had he returned via TWA.

TWA does not go to Dallas from Washington. One can go by various approved airlines from Washington via Dallas to Albuquerque. Thus one can go to Dallas by American Air Lines, thence by Braniff Air Lines to Amarillo, Texas, thence by TWA to Albuquerque. There are also other alternate routes from Washington via Dallas to Albuquerque over different approved air lines. The court found that it was not the custom or usual practice, nor was it required, that an air line accept unused air transportation tickets issued by another air line or to issue in exchange therefor an air line transportation ticket over its own line, and that it was impossible for Smith to physically exchange his return transportation via TWA from Washington to Albuquerque for another ticket issued by American Air Lines or any other scheduled air lines, covering all or any portion of the trip specified in the original transportation.

■ The well established principle that insurance policies will be liberally construed in favor of the insured [3] controls the construction of this policy. The policy does not make the actual exchange of the original ticket for other transportation a condition thereof. Failure to make such an exchange could in no way affect the risk, hazard or liability. Had the company intended to make the actual exchange of the original ticket for substituted transportation a condition of the policy determining liability, it should have been so stated in clear and explicit language. The factors which determine the company's liability for loss were that the insured be at the time thereof engaged in a part of a round trip journey, either on TWA under the original ticket, or on substituted transportation on other approved air lines, and that such round trip be the first round trip undertaken by the passenger. Whether Smith had exchanged his original ticket, surrendered it for cancellation, and with the proceeds purchased substituted transportation, or merely purchased substituted transportation, could not affect the liability of the insurance company. If he in fact was engaged at the time of the accident on a part of the first round trip from Washington to Albuquerque, he was within the coverage of the policy.

The dominant purpose of the policy was to insure the passenger on a round trip by commercial air line transportation over TWA and to give him the benefit of stopovers and travel by substituted approved commercial air lines, the only requirement being that the portion of the trip on which the liability was sought to be predicated be a part of the first round trip undertaken by the passenger and holder of the insurance policy. The court found that Smith was on his return from Washington to Albuquerque at the time of the accident and this finding is without substantial dispute in the evidence.

■ To hold under the facts as found by the court that it was necessary to actually exchange the unused portion of the return TWA ticket for other approved air line transportation for the return trip or any portion thereof would deprive the insured traveller of the beneficial provisions of the policy permitting him to return by substituted air travel and yet be protected. We do not decide whether the policy would

3. Harris v. Pacific Mut. Life Ins. Co. of California, 10 Cir., 137 F.2d 272; Aschenbrenner v. United States Fidelity & Guaranty Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137, rehearing denied 292 U.S. 615, 54 S.Ct. 861, 78 L.Ed. 1474; Bull v. Sun Life Assur. Co., 7 Cir., 141 F.2d 456, 457, 155 A.L.R. 1014.

be in force, had it been possible for Smith to exchange the unused portion of the TWA ticket for other air line transportation, because that question is not before us.

Affirmed.