Verna **ROBERTS**, Appellant,

v.

The **FIDELITY AND CASUALTY COM-PANY OF NEW YORK**, Appellee.

No. 25553.

United States Court of Appeals, Ninth Circuit.

Dec. 22, 1971.

---

William E. Hurley (argued), Donald L. Alderton, of Bernard & Hurley, Portland, Or., for appellant.

Howard M. Feuerstein (argued), Cleveland C. Cory, Don H. Marmaduke, of Davies, Biggs, Strayer, Stoel & Boley, Portland, Or., for appellee.

Before WEICK,* HAMLEY and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge:

Verna Roberts, the named beneficiary of a policy of flight insurance purchased by Gladys Pierce from The Fidelity and Casualty Company of New York (Fidelity), brought this Oregon diversity action against Fidelity to recover the fifteen thousand dollar face value of the policy. On facts most of which were agreed to in the pretrial order, the district court entered judgment for Fidelity. Plaintiff appeals. We affirm.

In August, 1968, Gladys Pierce, an unmarried resident of Portland, Oregon, forty-six years of age, was engaged in the real estate business. She had made a number of trips to Los Angeles and had there become acquainted with B. James Barton, who was employed at the Royal Inn, in Santa Monica, California. Miss Pierce had, on one or more of these trips, discussed with Barton his interest in real property located along the Columbia River.

In August, 1968, Miss Pierce arranged to go to Santa Monica to confer with Barton and his associates concerning Columbia River real estate. A second purpose in making this trip was to take her two nephews to Disneyland. Before leaving Portland, Miss Pierce told Mrs. Lovelady, the mother of the two boys, that she intended to stay at the Disneyland Hotel. She did not tell Mrs. Lovelady what mode of transportation would be used in traveling from Los Angeles to Disneyland and back. Disneyland is located in Anaheim, California, which is a suburb of Los Angeles.

On August 11, 1968, Miss Pierce purchased round trip United Air Line tickets from Portland to Los Angeles and return for herself and for her two nephews. The tickets were for transportation on an airplane scheduled to leave Portland International Airport at 5:00 p. m. on August 12, 1968, and return transportation on an airplane scheduled to leave Los Angeles International Airport at 3:00 p. m. on August 19, 1968.

On August 12, 1968, prior to boarding her flight from Portland to Los Angeles, Miss Pierce purchased two policies of flight insurance. She purchased the first policy, the one here in issue, from Fidelity's vending machine in the lobby of the Portland airport. This policy, in the amount of fifteen thousand dollars, named Verna Roberts, a creditor of Miss

---

* The Honorable Paul C. Weick, United States Circuit Judge for the Sixth Judicial Circuit, sitting by designation.

Pierce, as beneficiary. The front of the vending machine gave instructions on how to purchase a policy from the machine and displayed, in large letters:

"COVERS FIRST ONE-WAY OR ROUND TRIP FLIGHT (IF COMPLETELY TICKETED PRIOR TO ORIGINAL DEPARTURE) WITHIN 12 MONTHS ON ANY SCHEDULED AIR CARRIER TO ANY PART OF THE WORLD."

A specimen of the insurance policy being offered by Fidelity was attached to and hanging from the vending machine.

Miss Pierce deposited fifty cents in the vending machine to procure a fifteen thousand dollar policy. She marked the policy for round trip coverage but left blank the space where destination was to be noted. Miss Pierce then went to the insurance counter in the lobby and purchased a seventy-five thousand dollar policy of flight insurance issued by Fidelity. In her application for this second policy, Miss Pierce stated that her destination was Los Angeles.

Miss Pierce and her nephews arrived in Los Angeles on August 12, 1968. Barton met them at the International Airport and drove them to the Royal Inn, in Santa Monica, where Miss Pierce took accommodations for herself and the boys. She stayed there the nights of August 12 and 13. On August 14, 1968, while in Los Angeles, Miss Pierce purchased from Los Angeles Airways, Inc., a scheduled airline, round-trip tickets for helicopter passage from Los Angeles International Airport to Anaheim/Disneyland and return, for herself and her nephews. Miss Pierce planned to make the round trip on that day and take the boys to Marineland the following day. Her business conferences with Barton and others were to be later in the week. Miss Pierce retained her accommodations at the Royal Inn.

The helicopter crashed at 10:35 a. m., August 14, 1968, on the flight to Disneyland, killing all on board. When Fi-

delity declined to pay the face value of the fifteen thousand dollar policy to Mrs. Roberts, she commenced this action. The district court gave two reasons for holding that the insurance policy in question did not cover Miss Pierce at the time of her fatal accident. The first of these was:

"(1) The accident did not occur while she was traveling on a ticket covering the whole of such an airplane trip from point of departure to destination and return, as required by the policy."

This reason for rejecting plaintiff's claim is based upon the italicized words of the insuring clause of the policy, which clause reads as follows:

"2. INSURING CLAUSE: Ticket or Pass Requirement. The Company will pay the benefits specified below if during the term of this policy the Insured suffers loss resulting directly and independently of all other causes from accidental bodily injury (hereinafter referred to as "such injury"), sustained under circumstances specified below during the first one-way or round trip flight taken by the Insured after the purchase of this policy on Aircraft Operated by a Scheduled Air Carrier as defined below from the Point of Departure to the Destination, both shown above, and return if round trip ticket is obtained before leaving said Point of Departure, *provided that at the time the Insured sustains such injury he is traveling on a ticket or pass covering the whole of said airline trip,* issued to him for transportation on an Aircraft Operated by a Scheduled Air Carrier. A ticket issued to the Insured aboard such aircraft after leaving the Point of Departure but before reaching the first scheduled stop of such aircraft shall be deemed to have been issued before leaving the Point of Departure. Notwithstanding the policy provision for purchase of a round-trip ticket before leaving the Point of Departure, the following shall be deemed a round-trip: where

no ticket is required before boarding at the Point of Departure, the flight from the Point of Departure to Destination and the return flight from Destination to Point of Departure." (Emphasis supplied.)

It would appear that the italicized proviso in the above-quoted insuring clause, standing alone, fully supports the district court's described reason for rejecting the claim. The accident in which Miss Pierce lost her life did not occur while she was traveling on a ticket or pass covering the whole of her airline trip from Portland to Anaheim/Disneyland. In fact, she was not then traveling on a ticket which covered any of the airline trip for which she was ticketed before leaving Portland.

But plaintiff urges several reasons why, under circumstances to which she calls attention, this proviso of the insuring clause was not binding upon Miss Pierce at the time of the accident.

First, plaintiff questions whether Miss Pierce should be held to the terms of a policy which, although available in specimen form at the Portland airport vending machine, she in all probability did not have time to read before boarding the flight. In this connection, she points out that mailing envelopes are supplied at the vending machine and purchasers of policies are cautioned to mail them to the beneficiary before boarding the airplane, which Miss Pierce did. Thus she retained no copy for examination before purchasing her helicopter tickets.

We might find merit in this argument if the fine print policy language which operated to exclude coverage was of a kind which the average traveler would not expect to find in such a policy, and the purchaser had no other notice of that language. But the proviso here in question is not unusual, nor is it patently designed to defeat the normal expectations of the average traveler. The form of the policy, wherein a point of departure and a destination were to be stated, clearly indicates that it was limited to coverage for a particular trip, and was not term protection. Moreover, at the bottom of the specimen policy, there was printed, in bold face:

"THIS POLICY IS NON-RENEWABLE AND COVERS ONE-WAY FLIGHT ONLY UNLESS TICKETING FOR RETURN FLIGHT IS OBTAINED BEFORE LEAVING POINT OF DEPARTURE SUBJECT TO THE INSURING CLAUSE."

One purchasing a policy of flight insurance from an airport vending machine is perhaps not chargeable with reading the fine print of an available specimen policy. But he or she may reasonably be expected to read a bold-face notice on the specimen policy such as this. This notice makes it plain that a return flight is not covered unless ticketing for the return flight is obtained before departure. It necessarily follows from this that a one-way trip, to be covered by the policy, must also be ticketed before departure.

In addition, as noted earlier in this opinion, the vending machine itself displayed, in large letters, the caution that the policy only covers trips "completely ticketed prior to original departure." This caution is consistent with the terms of the policy.

Plaintiff further argues that, although it is now established that she could have purchased the helicopter ticket at the Portland airport, it was not unreasonable for her to assume, on August 12, 1968, without making inquiry, that such a ticket could not be purchased in Portland. This argument, however, is based upon speculation. It is equally possible that Miss Pierce may have known about the availability of helicopter tickets in Portland, but decided to purchase them in Los Angeles. The fact that she apparently arranged in advance to have Barton meet her and her nephews at the Los Angeles airport, and take them to the Royal Inn, in Santa Monica, indicates that, before leaving Portland,

she had given up the idea of going directly to Disneyland.[1]

Plaintiff urges that the last sentence of the insuring clause, quoted above, entitled Miss Pierce to assume that she would be covered on the Los Angeles-Anaheim/Disneyland helicopter flight.

We find this sentence irrelevant. It provides that there is round-trip coverage where no ticket is required before boarding at point of departure. A ticket was required before Miss Pierce boarded the flight from Portland to Los Angeles, and she had it in her possession. Moreover, since the accident did not occur on the return portion of Miss Pierce's trip, the presence or absence of round-trip coverage is immaterial.

■ Urging an alternative theory of recovery, plaintiff calls attention to the clause of the policy relating to substitute trips. She asserts that, under this clause, Miss Pierce was covered on the helicopter flight from Los Angeles to Anaheim/Disneyland. The clause is quoted in the margin.[2]

It will be noted that coverage under this clause is subject to three conditions. The first of these is that the transportation ticket or pass issued to the insured for the first airline trip prior to leaving his point of departure has been exchanged for another ticket or pass issued for transportation on the substituted trip. Miss Pierce did not obtain a physical exchange of tickets at Los Angeles when she purchaed the round-trip helicopter tickets.

It has been held that this condition is inapplicable where the substitute transportation is taken because of the cancellation of a scheduled flight. Steven v. Fidelity & Casualty Co. of New York, 58 Cal.2d 862, 27 Cal.Rptr. 172, 377 P.2d 284, 292 (1962). But no such circumstance is present in this case. It has also been held that this condition of the substitute trip clause is inapplicable where, at the place where the additional transportation ticket is purchased, it is impossible to effect an actual exchange of tickets. Fidelity & Casualty Co. of New York v. Smith, 189 F.2d 315, 318 (10th Cir. 1951); Rosen v. Fidelity & Casualty Co. of New York, 162 F.Supp. 211, 213–214 (E.D.Pa.1958). Here however, plaintiff does not dispute Fidelity's assertion that Miss Pierce could have, at Los Angeles, exchanged her original ticket for a new one which included the trip to Anaheim/Disneyland.

Thus, assuming, but not deciding, that the helicopter flight was a "Substitute Trip" within the meaning of the policy, and that the second and third conditions of the clause applicable to substitute trips had been fulfilled, coverage thereunder nevertheless failed because of failure to fulfill the first condition of that clause.

Affirmed.

1. Plaintiff thinks the assumption that Miss Pierce knew, before leaving Portland, that Disneyland is not in Los Angeles but in the neighboring city of Anaheim is of "dubious validity," But defendant need not rest on an assumption as to this since plaintiff testified that Miss Pierce told her, prior to the flight, that Disneyland had helicopter service.

2. "3. SUBSTITUTE TRIP COVERED IF TICKET EXCHANGED. In case of a change in the itinerary of said first airline trip referred to in Section 2 above, following the issuance of this policy and after the Insured has left the Point of Departure on said trip, the insurance afforded as set forth in Section 2 above shall no longer apply on the original itinerary but shall apply on the new itinerary in the same manner and to the same extent as it would have applied on the original itinerary, provided that (1) the transportation ticket or pass issued to the Insured for said first airline trip prior to his leaving the Point of Departure has been exchanged for another ticket or pass issued for transportation on an Aircraft Operated by a Scheduled Air Carrier on the substituted trip and (2) the Point of Departure is the same as that shown above and (3) at least one other stop on the new itinerary is a stop that was scheduled on the original itinerary for said first airline trip."