Kathleen E. **DABURLOS**

v.

**COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, and Fidelity and Casualty Company of New York.**

Civ. A. No. 69–1947.

United States District Court,
E. D. Pennsylvania.

Sept. 10, 1974.

See also D.C., 367 F.Supp. 1017.

Francis E. Marshall, Marshall, Dennehey & Warner, P. A., Philadelphia, Pa., for defendant.

David F. Binder, Raynes, McCarty & Binder, Philadelphia, Pa., for plaintiff.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

### I

This is a diversity action based upon four policies of airline trip insurance which were issued by the defendants to Kenneth and Shirley Daburlos who named the plaintiff as beneficiary on the policies. Previously, both parties had moved for summary judgment and the court denied the same. Subsequently, this case was tried to the court without a jury.

The court denied summary judgment primarily because from the evidence we believed that a crucial factual issue appeared, though incompletely developed, and the court could not, sua sponte, draw inferences on the evidence against either party. We now grant judgment for the plaintiff.[1]

### II

On May 16, 1968, two round-trip United Air Lines tickets were purchased in Reading, Pennsylvania, on behalf of

---

1. This memorandum shall constitute our findings of fact and conclusions of law under F.R. Civ.P. 52(a).

Kenneth and Shirley Daburlos, for flights from Philadelphia, Pennsylvania to Los Angeles, California and return to Philadelphia. The tickets indicated a scheduled departure from Philadelphia on May 19, at 6:00 P.M., on United Air Lines Flight 83Y and a scheduled departure from Los Angeles on May 22, at 9:05 A.M., on Trans World Air Lines Flight 38Y.

On May 19, 1968, the policies in question were purchased by Kenneth and Shirley Daburlos at the companies' insurance counter at Philadelphia International Airport. Both Mr. and Mrs. Daburlos purchased two policies, one from each defendant, each has a principal sum of $75,000 and the premium for each was $2.50. After purchasing the insurance policies, Mr. and Mrs. Daburlos mailed them to the plaintiff-beneficiary in an envelope provided by defendants with the policies. Then, the Daburloses flew from Philadelphia to Los Angeles as scheduled.

On May 22, 1968, Mr. and Mrs. Daburlos each purchased a "sky-tour" round trip ticket from Los Angeles Airways, Inc. (LAA) at Los Angeles International Airport (LAIA) for flights from Los Angeles Airport to Anaheim/Disneyland and return. They made an uneventful flight from LAIA to Anaheim/Disneyland. However, while they were passengers on the return flight from Anaheim/Disneyland to LAIA, the helicopter, in which they were riding, crashed and they were killed, at approximately 5:55 P.M. on May 22, 1968.

### III

All four insurance policies involved are identical. They contain, at the top, blocks for the identification of the insured and the beneficiary. In addition, there is one block space for point of departure and one block space for point of destination and one of two squares to be checked indicating a one way or a round-trip ticket. On each policy, Philadelphia was listed as the point of departure and Los Angeles as the point of destination and the trip designated as on a round-trip ticket. Immediately above these blocks appears the following: "I hereby apply to Company named below for Scheduled Air Carrier (Airline) Trip Insurance to insure me on one airline trip between the Point of Departure and Destination shown below."

The principal clauses of the policy, as relevant here are as follows:

"2. INSURING CLAUSE: Ticket Or Pass Requirement. The *Company will pay* the *benefits* specified below *if during the term of this policy* the *Insured suffers loss* resulting directly and independently of all other causes from *accidental bodily injury* (hereinafter referred to as 'such injury'), sustained *under circumstances specified* below *during the first one-way or round trip flight taken by the Insured after the purchase of this policy* on Aircraft Operated by a Scheduled Air Carrier as defined below *from the Point of Departure to the Destination, both shown above, and return if round trip ticket is obtained before leaving said Point of Departure, provided that at the time that the Insured sustains such injury he is traveling on a ticket or pass covering the whole of said airline trip,* issued to him for transportation on an Aircraft Operated by a Scheduled Air Carrier. A ticket issued to the Insured aboard such aircraft after leaving the Point of Departure but before reaching the first scheduled stop of such aircraft shall be deemed to have been issued before leaving the Point of Departure.

3. SUBSTITUTE TRIP COVERED IF TICKET EXCHANGED. *In case of a change in the itinerary of said first airline trip referred to in Section 2 above,* following issuance of this policy and after the Insured has left the Point of Departure on said trip, *the insurance afforded as set forth in Section 2 above shall no longer apply on the original itinerary but shall apply on the new itinerary in the same manner and to the same extent as it would have applied on the original itinerary,*

*provided that (1) the transportation ticket or pass issued to the Insured for said first airline trip prior to his leaving the Point of Departure has been exchanged for another ticket or pass* issued for transportation on an Aircraft Operated by a Scheduled Air Carrier *on the substituted trip and (2) the Point of Departure is the same as that shown above and (3) at least one other stop on the new itinerary is a stop that was scheduled on the original itinerary for said first airline trip.*

4. DEFINITION AND DELIMITATION OF COVERAGE. This policy applies only to such injury sustained by the Insured during such first or substituted airline trip referred to in Sections 2 and 3 above. . . ."

These three provisions are on the front of the policy. Superimposed over these clauses, primarily clause 3, appear the following words, which are printed in half-inch high letters, outlined in red ink:

"THIS IS A LIMITED POLICY READ IT CAREFULLY."

The other relevant provisions of the policy are printed on the back of the policy.

"6. POLICY TERM. This *insurance shall commence* on the day and hour shown above and shall *terminate either* upon completion of the above described airline trip or upon expiration of, *or surrender for refund or credit of, the transportation ticket* hereinbefore referred to *but in no event shall this insurance extend beyond a period of twelve months.*

. . .

POLICY PROVISIONS. Entire Contract; Changes: *This policy,* including the endorsements and the attached papers, if any, *constitutes the entire contract of insurance.* No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto.

No agent has authority to change this policy or waive any of its provisions." (Emphasis added.)

IV

It is undisputed that the accident in which the insureds lost their lives did not occur while either was traveling on a ticket covering the whole of the original trip from Philadelphia to Los Angeles to Philadelphia. Moreover, it is undisputed that the insureds did not exchange their original round trip tickets written by United Airlines for any other tickets.

At all times material to this case, both United Air Lines and Los Angeles Airways were scheduled air carriers within the definition contained in defendants' insurance policies, and were members of the International Air Transportation Association (IATA). The IATA had standard tickets used by every airline member. Each member airline had the authority and was able to issue tickets for flights on other member airlines. Thus, LAA could issue a ticket for a flight on United Air Lines and vice-versa. In 1968, it was possible for both United Air Lines and LAA to issue a ticket to a passenger permitting him or her to fly from Philadelphia to LAIA to Anaheim/Disneyland to LAIA to Philadelphia which would have been on a four-flight coupon ticket.

It is also undisputed that, at the time, any member of IATA could exchange tickets. This exchange procedure could be carried out without additional charge except for the cost of additional flights. In fact, at the time in question, the tickets of approximately sixty (60%) percent of the passengers of LAA were written by other airlines. Also, the premium under a trip policy of the defendants is the same for any trip within the continental United States regardless of the distance travelled. No change in the premium results as a consequence of an itinerary change on an exchange of tickets pursuant to the policy. Consequently, the premium price for the insurance

policy in question would have been the same had the Daburloses' tickets included Anaheim as a destination point. Moreover, this would be true even if the original ticket had been exchanged for another ticket listing Anaheim as the destination point provided all other terms and conditions of the policy were met. The alleged purpose of the exchange provision is related to the delimitation of risk and investigatory costs.

The only scheduled air carrier operating between Los Angeles and Anaheim/Disneyland at the time of the accident was LAA.

The only facts available on the mechanics of the exchange of tickets at the time the motions for summary judgment were decided came from the deposition of Mr. John T. Kane who was vice-president, treasurer, and a director of LAA at the time of the accident and who was familiar with the ticketing procedures of LAA as of that date.

In response to questions whether it was "physically possible" for the Daburloses or any other passenger to have exchanged their original tickets for a new ticket that would have read—Philadelphia, Los Angeles Airport, Anaheim/Disneyland, Los Angeles Airport, Philadelphia—through any federally certified airline belonging to the I.A.T.A., including LAA, United Air Lines, American Air Lines, etc., Mr. Kane replied in the affirmative. However, Mr. Kane, at a later time, qualified his answers on the exchange practice. He stated that LAA would not, in a situation such as that presented in this case, have rewritten the ticket from Philadelphia to Los Angeles but rather only the unused portion of the original ticket would be rewritten. Thus, if the original ticket was for flights from Philadelphia to Los Angeles to Philadelphia, LAA would have exchanged tickets for the Los Angeles to Philadelphia portion by issuing a 3-part coupon ticket (I.A.T.A. ticket) showing Los Angeles to Anaheim/Disneyland to Los Angeles to Philadelphia. The original ticket numbers would be put on the new tickets.

The actual exchange practice was not further clarified in the summary judgment record. In light of the latter statement of Mr. Kane and the procedural posture at that time and the fact that counsel for neither party had addressed that issue, we could not grant summary judgment. Each party may have relied on various parts of the deposition so that we could not say that crucial facts relating to the exchange practice were undisputed.

We now find after trial on the merits that in the case of a request for an exchange of tickets to change the ticketed itinerary, LAA would have rewritten only the unused portion of the original ticket and not rewritten on the new ticket the Philadelphia to Los Angeles portion of the original ticket. We further find that this procedure would have been followed by United Air Lines, LAA, and other members of IATA. We further find that it would have been impossible for Kenneth and Shirley Daburlos to comply with the express terms of clause 3 of the policy on exchange. We conclude that the impossibility of performance of the conditions renders it unnecessary to be complied with and that the Daburloses only need have been on their first round trip, in fact, at the time of the accident in question. Finally, we find the Daburloses were so engaged at the time of the happening of the accident and that plaintiff has a right to collect under the policy.

### V

We think it obvious that the new ticket procured in an exchange would have to list Philadelphia as the point of departure to comply with the literal terms of clause 3. There is some controversy over this conclusion which we will discuss later but first we will examine the evidence in light of this conclusion.

In addition to the evidence of Mr. Kane, plaintiff presented Helen T. Walsh. Miss Walsh has been employed by United Air Lines for 21 years as a ticket agent, a senior ticket agent, and a ticket office representative. She is fa-

miliar with the ticketing procedures of United Air Lines and those in effect in May of 1968. She testified that the ticketing procedures of United Air Lines are the same in Philadelphia and Los Angeles.

Miss Walsh's testimony is totally corroborative of that of Mr. Kane on the ticketing procedures. She testified that if the Daburloses had exchanged their tickets at the United counter at LAIA in order to also include a flight to Anaheim/Disneyland, the new ticket would have been a three part coupon ticket listing Los Angeles to Anaheim to Los Angeles to Philadelphia as the flight itinerary. It developed that such practice is completely regular procedure and there is simply no reason to issue an extra ticket which in this situation would be an extra Philadelphia to Los Angeles flight. On United Air Lines tickets and other IATA tickets there are other blocks besides those for the listing of flights. There are blocks marked for issuing office only and two small blocks designated origin and destination. Miss Walsh testified that these blocks are not filled in on tickets issued by United Air Lines pursuant to an exchange unless an international ticket is involved. Defendants unsuccessfully attempted to prove through this witness that other airlines using the same standard IATA ticket vary in the practice of coding the issuing office only blocks and the origin and destination blocks on the exchanges. Even assuming that such variation does exist, that would not alter the departure and destination points as reflected by the ticketed itinerary. Plaintiff has established that if the Daburloses had exchanged their original tickets at LAIA that they would have received in exchange a ticket from Los Angeles, To Anaheim/Disneyland, To Los Angeles, To Philadelphia. It is clear that then Los Angeles would have been the Point of Departure within the meaning of clause 3, subsection 2 of the policies in question. We conclude on the basis of this testimony that it would have been impossible for the Daburloses to comply with the express terms of clause 3 on the exchange of tickets.[2]

## VI

As we said above, it is obvious that the new ticket or an exchange would have to list Philadelphia as the point of departure to comply with the literal terms of clause 3, i. e. the new ticket would list Philadelphia—Los Angeles—Anaheim/Disneyland—Los Angeles—Philadelphia. The defendants were apparently of the same view when they wrote their brief in support of their motion for summary judgment. In a reply brief on that motion they put forth a second untenable position which we discussed in our memorandum denying summary judgment and which defendants have now abandoned.

At trial, defendants abandoned their previous interpretations of the critical section of the contract and set forth a third position. Defendants now contend that the requirement of subsection (2) refers, not to the ticketed itinerary, but rather to the itinerary in fact as it appears on the policy. In our decision on the motion for summary judgment, in examining all the possibilities, we said that subsection (2) could not represent a reference to the itinerary in fact rather than a ticketing requirement because such an interpretation would render the clause mere surplusage. We are still of that view.

An examination of the policy demonstrates that subsection (2) of clause 3 must be read as a ticketing requirement in order for it to make sense in the context of the policy.

. The defendants rely strongly on the fact that this is a limited policy for trip insurance and not term insurance. The two principal clauses are 2 and 3. Clause 2 provides, in pertinent part,

2. We deny the reserved motion of the defendants to strike the testimony of Helen T. Walsh. We find her testimony admissible on the ticketing procedures of United Air Lines, and of associated air lines.

that the insurers promise to pay certain enumerated benefits if: (1) The person whose name appears alongside the word "Insured", located in the block immediately above the insuring clause suffers a loss during the term of the policy; (2) the loss results directly and independently of all other causes from accidental bodily injury; (3) the loss is sustained during the first one way or round trip flight taken by the insured, after the purchase of the policy, from the Point of Departure to Destination as shown on top of the policy (here Philadelphia and Los Angeles respectively); and (4) the round trip ticket is obtained before leaving said Point of Departure; and provided that (5) the insured, at the time of the injury, is traveling on a ticket or pass covering the whole of said airline trip.

On the basis of this clause, the insurers have manifestly completely tied in the insurance coverage for the trip listed at the top of the policy with the airline flight tickets for said trip so that trip has been made coterminous with and defined by the airline ticket purchased therefor.

Clause 3 provides as follows: In case of a change in the itinerary of the airline trip referred to in clause 2, after the issuance of the policy and after the Insured has left the Point of Departure, the insurance of clause 2 no longer applies on the original itinerary but shall apply on the new itinerary provided: (1) The airline ticket issued pursuant to clause 2 is exchanged for another ticket on the substitute trip; and (2) the Point of Departure is the same as that shown on the top of the policy; and (3) at least one other stop on the new itinerary is a stop that was scheduled on the original itinerary.

The interpretation which the defendants propose for subsection (2) of clause 3 renders it meaningless and, at any rate, totally at odds with the remainder of the policy. Since the operation of clause 3 is premised upon a change of itinerary in the first airline trip of clause 2, after the policy is issued, and "after the Insured has left the Point of Departure on said trip" (which pursuant to clause 2 must be Philadelphia), an additional proviso that the Point of Departure, in fact, on the new itinerary be the same as on the policy, and necessarily the same as on the original itinerary, is completely unnecessary for it would be impossible, in fact, for it to be otherwise. Clause 2, we have seen, defines the trip by the airline ticket for the same. The premises of clause 3 all do so by reference. Subsection (1) of clause 3 expressly refers to ticketed trip as does subsection 3 of clause 3 by requiring one other stop on the new itinerary to be one scheduled on original airline trip itinerary. The entire thrust of the policy is to define and limit the word trip by reference to the ticketed trip.

At the trial of this matter, Mr. Arch L. Pearson, Secretary of the defendant and an officer since November 1966, was permitted to testify. In the final analysis, he agreed that the proposed interpretation of subsection (2) of clause 3 rendered that condition meaningless, as indicated by his testimony.[3]

"Q. The question is: Is it possible for Sub-Clause 2, which says 'The Point of Departure is the same as that shown above'—is it possible for that not to be complied with?"

"A. I can think of no instance." (Trial transcript, p. 63)

---

3. At trial, Mr. Pearson testified over plaintiff's objection and subject to her motion to strike. We now overrule her objection and deny her motion to strike. Mr. Pearson also testified that the company would have paid under the policy if the Daburloses had exchanged their tickets even if Philadelphia was not listed as the Point of Departure on the new tickets issued pursuant to the exchange. However, we reject this testimony as incredible because it is self-serving and totally at odds with the overall sense of t,e contract and with the company's position as articulated up to the time of trial.

We conclude, therefor, that to comply with the express terms of subsection (2) of clause 3, in this case Philadelphia would have had to be listed as the Point of Departure on the new tickets on exchange.

## VII

The refinements over time in airline trip insurance leading to the present policy can be traced by reference to court decisions. *See,* Thomas v. Continental Casualty Company, 225 F.2d 798 (10th Cir. 1955); Fidelity and Casualty Co. of New York v. Smith, 189 F.2d 315 (10th Cir. 1951); Rosen v. Fidelity and Casualty Co. of New York, 162 F.Supp. 211 (E.D.Pa.1958).

The ticketing requirements set out above have resulted in judgments for the insurers in recent cases, involving materially similar air line trip insurance, when the insureds died on airline flights, not part of their originally ticketed trip, and where no exchange of tickets took place. Mack v. Commercial Insurance Company of Newark, New Jersey, Case No. 3834 (Court of Appeals, Fifth District, Stark County, Ohio; filed May 1, 1973), cert. den. No. 73–541 (Supreme Court of the State of Ohio; Sept. 14, 1973); Roberts v. Fidelity and Casualty Company of New York, 452 F. 2d 981 (9th Cir. 1971); First Nat. Bank of Chicago v. Fidelity and Cas. Co. of N.Y., 428 F.2d 499 (7th Cir. 1970), cert. den. 401 U.S. 912, 91 S.Ct. 878, 27 L.Ed.2d 811 (1971). Indeed, both the Mack and Roberts cases involved Los Angeles Airways on flights between Los Angeles International Airport and Anaheim/Disneyland.

None of these cases, however, have been faced with the issue presented in this case as presented above.

■ There are no precise Pennsylvania precedents so we, as if a court of the state, must make a determination of what the Pennsylvania Supreme Court would probably rule in a similar case. In order to make this determination, we turn to principle, precedent, and the con-

temporary jurisprudential philosophy of the Pennsylvania Court. In Re Royal Electrotype Corporation, 485 F.2d 394, 396 (3d Cir. 1973).

Although there are no precise Pennsylvania precedents, we believe that a judge of this court has already correctly predicted what the Pennsylvania Supreme Court would do in this case. Rosen v. Fidelity and Casualty Co. of New York, *supra.*

In *Rosen*, the late Judge Kirkpatrick held that the exchange provisions of a policy would not avoid liability on a policy. *Rosen* referred to the decision in Fidelity and Casualty Co. of New York v. Smith, *supra*, where the failure to exchange, in a situation where the court found it impracticable to do so, did not avoid liability. The court in *Smith* reached that result by construing the policy so that exchange was not an absolute condition. Judge Kirkpatrick faced with a policy, such as here, where the exchange provisions are obviously absolute conditions also held that the plaintiff could recover where compliance with the exchange provisions was impossible.

We agree with the result reached by Judge Kirkpatrick.

We have found that it would have been impossible for the insureds to exchange their tickets as required by the literal terms of clause 3. The plaintiff has presented direct evidence with respect to Los Angeles Airways' and United Air Lines' ticket exchange procedures and those of associated airlines. We find this evidence adequate to support a finding of impossibility.

■ Generally, we believe that the rule of insurance law that conditions which are impossible of performance are ineffectual and void, Strauther v. General American Life Insurance Co., 141 S. W.2d 128, 130 (Mo.App.1940); 7 Couch, Insurance 2d § 36.49 (1961), is adequate to dispose of this case. It appears that the defendants do not seriously contest this proposition but rather rest their case on their most recent interpretation of the policy. However, since, as we in-

terpret the policy, compliance with subsection (2) of clause 3 was impossible, we shall analyze this case as we believe the Pennsylvania Supreme Court would.

■■ The general approach is that an insurance policy will not be rewritten but will be given a reasonable interpretation in light of the subject matter and situation of the parties when the contract was made. Tennant v. Hartford Steam Boiler Inspection & Ins. Co., 351 Pa. 102, 107–108, 40 A.2d 385, 387 (1944); Janney v. Scranton Life Ins. Co., 315 Pa. 200, 203, 173 A. 819, 820 (1934). This approach is sufficiently flexible that conditions manifestly contrary to public policy, such as those requiring the insured to do an impossible act, will be disregarded and the policy applied to effectuate the dominant permissible intent of the parties. The approach of the Pennsylvania Supreme Court to such a condition was articulated long ago.

> "In considering this question we must take a reasonable view of the contract. It was evidently one of indemnity. It was for this the plaintiff contracted, and we would not do the company the injustice even to suggest that it had not the same end in view . . . ."
>
> . . . . "It will thus be seen that where the reason of a condition does not apply this court has refused to apply it . . . . We are not to suppose that conditions involving forfeitures are introduced into policies by insurance companies, which are purely arbitrary and without reason, merely as a trap to the assured or as a means of escape for the company in case of loss. When therefore a general condition has no application to a particular policy; where the reason which alone gives it force is out of the case, the condition itself drops out with it."
>
> . . . .
>
> . . . . "We have a right to assume that the parties contracted with

reference to the peculiar nature and situation of the subject matter insured." Grandin v. Rochester German Insurance Company, 107 Pa. 26, 35–36, 37, 38 (1884).

This approach was very recently applied in Burne v. Franklin Life Insurance Company, 451 Pa. 218, 224–225, 301 A.2d 799, 802–803 (1973). That case involved an action for recovery of the accidental (double indemnity) death benefits of a life insurance policy. The insured was struck by an automobile and kept medically alive, although in a vegetative state, for four and one-half (4½) years, through extraordinary medical attention. The court disregarded, on public policy grounds, that provision of the policy providing that the accidental death benefits would be paid only if death occurred within ninety (90) days of the date of the accident, and the court stated:

> "It is well settled that if a provision in an insurance policy cannot reasonably be applied to a certain factual situation it should be disregarded." Burne v. Franklin Life Insurance Company, 451 Pa. 218, 224, 301 A.2d 799, 802 (1973).

This general approach, implemented both by interpreting a policy and/or disregarding certain terms of a policy based upon the total context in which the policy was executed, has, moreover, been applied to conditions impossible of performance and inconsistent with the facts. Albert v. Mutual Ben. Health & Accident Ass'n, Omaha, 350 Pa. 268, 276–277, 38 A.2d 321, 324 (1944); Bingell v. Royal Ins. Co., 240 Pa. 412, 417, 87 A. 955, 957 (1913); Humphreys v. National Benefit Ass'n, 139 Pa. 264, 20 A. 1047 (1891); Grandin v. Rochester German Insurance Company, *supra*.

In this case, the insureds purchased air line trip insurance. The policy generally contemplates that the trip, though defined by the flights ticketed prior to departure, may be modified and coverage extended thereto by an exchange of

tickets. The modification of the trip and the extension of coverage thereto is a contractual right purchased by the payment of the premium. Yet, it has been demonstrated that it was, in fact, impossible for the insureds, within the literal terms of clause 3, to modify their insurance to cover their modified trip. This fact requires that this condition of exchange be disregarded and that the dominant purpose of the parties be effectuated. We think this clearly requires the conclusion that the insureds were covered by the policy on their flight to and from Anaheim/Disneyland because under these facts to deny coverage because of the literal terms of clauses 2 and 3 of the policy would be to frustrate the dominant intent of the parties.[4]

Accordingly, we enter the following order.[5]

### ORDER

### FOR JUDGMENT

And now, this 10th day of September, 1974, this action having come before the Court on final hearing and it having been tried and a final decision rendered, it is ordered that:

(1) Defendants' motion to dismiss under F.R.Civ.P. 41(b) is denied;

(2) Plaintiff, Kathleen E. Daburlos, shall recover of each defendant, Commercial Insurance Company of Newark, New Jersey and Fidelity and Casualty Company of New York, the sum of One Hundred and Fifty Thousand ($150,000) Dollars together with interest at the rate of six (6) percent from August 20, 1968.

4. Alternatively, we believe the Pennsylvania Supreme Court would apply the rule that where at the time of issuing an insurance policy the company knows or has reason to know that one of the conditions is inconsistent with the facts, and the insured has been guilty of no fraud, the company is estopped from setting up the breach of such condition. Central Market Street Co. v. North British & M. Ins. Co., 245 Pa. 272, 278, 91 A. 662, 664 (1914).

5. The plaintiff advances other legal theories, in addition to the one discussed in this opinion, in support of her prayer for relief. As a federal court predicting how the highest court of Pennsylvania would decide this case, we believe it appropriate to dispose of the case on the narrowest state law approach possible, and rest there. Consequently, we do not address the other theories advanced by the plaintiff.